**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eduardo CANCELA,
Defendant-Appellant.**

**No. 85–6033
Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

March 20, 1987.

James F. Gilbride, Scott A. Silver, Miami, Fla., for defendant-appellant.

Leon B. Kellner, U.S. Atty., Sonia Escobio O'Donnell, Mayra Reyler Lichter, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HATCHETT and CLARK, Circuit Judges, and TUTTLE*, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This appeal presents the sole issue of the correctness of the trial judge's denial of Cancela's motion to suppress evidence of the presence of 750 pounds of cocaine on his premises, which motion was based upon alleged false statements in the affidavit of the special agent who procured a search warrant, and based upon the facial insufficiency of the affidavit as a basis for the issuance of the warrant.

* *See* Rule 3, Rules of U.S. Court of Appeals for   the Eleventh Circuit.

## I. STATEMENT OF THE CASE

The magistrate issued a search warrant for a house occupied by Cancela and of a 26 ft. boat identified by its registration number based upon an affidavit by one Carl Florez, a special agent of the FBI. The paragraphs of the affidavit which are subject to the attack by appellant follow:

5. The information in paragraph 6 below, furnished in support of this application for search warrant comes from a confidential informant (hereinafter referred to as CI # 1) personally known to the affiant. CI # 1 has furnished information to me about numerous major narcotics traffickers. Based upon this information, I caused a search to be made of the files of the FBI and DEA and corroborated the details and specifics of the informant's information. In addition, I and other agents have corroborated through surveillances, information from CI # 1 relating to sites and present whereabouts of known narcotics traffickers.

6. On October *20*, [s/CAF 10/20/84],[1] CI # 1 told me that a nameless small power boat, white in color, with gray decking, approximately 26 feet in length, with twin Mercury "200" outboard motors, bearing Florida Registration FL 0565 EY, approached the upper Florida Keys area by water at a high rate of speed, and used evasive tactics in order to avoid detection and/or arrest by U.S. Customs or other border authorities. CI # 1 stated these evasive tactics were to make detection of the vessel's clandestine dockage point difficult for such authorities and based upon my experiences in narcotics investigations I know that to be true. CI # 1 told me that the above described vessel contained a large quantity of cocaine, which would remain on board, while the above described vessel was trailered north on Route U.S. 1 to a "stash" location.

In point of fact, CI # 1 was one Glenn Ward who was acting as an informant for the FBI and who actually brought in the 26 ft. boat from the Bahamas. His name was not disclosed in the affidavit by Florez for fear of retributative action by someone who might be harmed by his testimony. Ward was in the salvage business in the Florida Keys and he regularly picked up abandoned and sunk and damaged vessels, reworked them, and then either returned them to the owner if paid or kept them and sold them on his own account if they were not reclaimed.

Appellant attacks three statements in the affidavit as being "material misrepresentations" which he says require this Court to hold that the trial court erred in not suppressing the seized evidence in accordance with *Franks v. Delaware*, 438 U.S. 154, 90 S.Ct. 2674, 57 L.Ed.2d 667 (1978). These three statements are as follows:

A. "CI # 1 told me that a nameless small power boat, white in color, with gray decking, approximately 26 feet in length, with twin Mercury "200" outboard motors, bearing Florida registration FL 0565 EY, approached the upper Florida Keys area by water at a high rate of speed, and used evasive tactics in order to avoid detection and/or arrest by U.S. Customs or other border authorities,"

B. "CI # 1 stated that these evasive tactics were to make detection of the vessel's clandestine dockage point difficult for such authorities", and

C. "CI # 1 has furnished information to me about numerous major narcotics traffickers."

At the hearing on the motion to suppress, it was apparent that the first quoted statement in the affidavit was incorrect. Agent Florez testified that the date contained in the affidavit as to when the boat was brought in from the Bahamas by CI # 1 should have been October 19, instead of October 20, as written in on the face of the affidavit. He testified that this was a mistake, apparently due to the fact that he made the affidavit on the 20th of October.

---

**1.** The bracketed part was Florez's initials and date because the date "20" was inserted by handwriting.

As to the second statement, he testified that he had *not* been told by Ward that he had used evasive action and that the purpose of using evasive action was to make detection of the vessel's clandestine dockage points difficult for such authorities. Florez testified, instead, that while he was arranging with Ward as CI # 1 to go to the Bahamas and pick up the load of cocaine, they had talked of the possibility that it would be necessary to use evasive tactics upon Ward's return to the Keys and that he had assumed that Ward had done so when he prepared the affidavit.

With respect to the third basis for claiming the existence of false statements in the affidavit, Cancela depends on his argument that neither Ward nor Florez was able to state that any of the facts communicated by Ward to Florez in the appropriate time frame actually resulted in any *arrests, convictions or sentences* for any narcotics related activities. There was, however, substantial evidence from Ward and from Florez that Ward had supplied names, boat registration numbers, and crews of a number of vessels which were found by Ward during his business as salvor and which he had returned to owners even though he assumed that the boats may have been used for drug operations. There was also ample evidence that the information given to Florez by Ward had been corroborated by other sources within the FBI records or otherwise. Florez testified that the information given by Ward had been of distinct benefit in the FBI's efforts to curb the drug traffic in the Florida Keys.

The trial court denied the motion to suppress, stating:

... A careful reading of the affidavit establishes that probable cause is set forth therein.

The federal police had evidence set forth in the affidavit that a boat had entered the Florida waterways with cocaine. The information came from an informant who had supplied information concerning major narcotic traffickers on previous occasions, *a fact that we find amply supported by the record before this Court,* contrary to the assertions of

defendant. Further, the boat was specifically identified in color and markings.

In addition, on October 20th, 1984, the FBI instituted surveillance which corroborated the detailed information supplied by the information and as set forth in paragraph eight of the warrant.

Applying the common sense test of *United States v. Ventresca,* 380 U.S. 102 [85 S.Ct. 741, 13 L.Ed.2d 684], 1965, we hold that the affidavit, viewed from a totality of the circumstances, establishes more than adequate probable cause for the magistrate to authorize the issuance of a warrant to search the premises, the boat and the Toyota vehicle.

We reject the argument of defendant that the typographical error in the date appearing in paragraph six was material, intentional or significant under the circumstances. Defendant's argument is the type of hypertechnical non sequitur which has been condemned by the Supreme Court in recent rulings when reviewing the affidavit to a search warrant.

*United States v. Leon* [468 U.S. 897], 104 Supreme Court [S.Ct.] 3405 [82 L.Ed.2d 677], 1984, is also relevant. The evidence establishes that the agents acted in good faith and in reasonable reliance on a search warrant signed by a neutral, independent and detached magistrate.

There is no persuasive or credible evidence of record that any police officer knowingly acted in bad faith or *intentionally misled the magistrate or knowingly or recklessly falsified the affidavit* or that the magistrate performed in anything but a neutral and detached jurisprudential function.

The police in this case properly proceeded with the good faith belief, objectively reasonable, that the warrant was proper, and little remained for them to do except to execute the warrant in accordance with law.

There is no credible evidence that the warrant was fatally deficient, and *we reject defendant's argument that the error in paragraph six concerning the date of October 20 or the statement that*

*the vessel took evasive action establishes intentional or reckless misrepresentations.*

In sum, we hold that if the warrant is defective in some particular, the police acted in good faith and in an objectively reasonable manner.

We find that the United States has sustained its burden of proof in this matter and the motion of the defendant, Eduardo Cancela, to suppress will be denied. (Emphasis added.)

The court then accepted Cancela's conditional plea of guilty under Fed.R.Crim.P. 11.[2] This appeal followed.

## II. STANDARD OF REVIEW

The parties agree that the reviewing court has the obligation of insuring that the magistrate issuing a search warrant had a substantial basis for concluding that probable cause existed. As an aid to this determination, this Court has held that a decision by the trial court that misstatements in the affidavit were not made recklessly or intentionally are findings of fact which can be reversed only if clearly erroneous. *United States v. Strauss*, 678 F.2d 886 (11th Cir.1982). *See also, United States v. Llinas*, 603 F.2d 506, 508 (5th Cir.1979), *cert. denied*, 444 U.S. 1079, 100 S.Ct. 1030, 62 L.Ed.2d 762 (1980).

## III. DISCUSSION

We consider appellant's arguments as to misstatements contained in the affidavit seriatim.

(A) The trial court held, with respect to the evasive action statement:

There is no credible evidence that the warrant was fatally deficient, and we reject defendant's argument that the error in paragraph six concerning the date of October 20 or the statement *that the vessel took evasive action establishes intentional or reckless misrepresentation.*

We reconsider this statement as a finding of fact as described in *Strauss, supra,* 893. *Strauss* also held that misstatements in the affidavit "intentionally made or in reckless disregard of the truth, and if material, will void the warrant." *Strauss* at 893. Citing *United States v. Bradsby,* 628 F.2d 901, 904 (5th Cir.1980). The trial court's determination here that Cancela's argument that the statements as to evasive action established intentional or reckless misrepresentations was unsupported on the record fully disposes of this issue. The trial court apparently credited Agent Florez's explanation that he had put down in the affidavit what Ward had contemplated doing as explained to him before he went to the Bahamas to pick up the load of cocaine under the direction of the FBI. We cannot find this determination by the court to be clearly erroneous.

(B) Since Agent Florez's testimony with respect to what he and Ward discussed before Ward's departure for the Bahamas is the same with respect to the clandestine destination, we conclude that, although the trial court made no specific finding with respect to this point, it is really a part of the "evasive" action contention by the appellant.

(C) We come finally to the contention made by appellant that there is a lack of showing of "reliability" of the informant. The standard as to the degree of reliability that must be shown in such a situation is outlined in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Court there said:

For all these reasons, we conclude that it is wiser to abandon the "two-pronged test" established by our decisions in *Aquilar* and *Spinelli.* In its place we affirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. See *Jones v. United States* [362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)], *supra;*

---

2. This Rule provides as follows:
   **Rule 11. Pleas.**
   **(a)** *Alternatives*
   **(2)** *Conditional Pleas.* With the approval of the court and consent of the government, a defendant may enter a conditional plea of.

guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pre-trial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

*United States v. Ventresca,* 380 U.S. 102 [85 S.Ct. 741, 13 L.Ed.2d 684] (1965); *Brinegar v. United States,* 338 U.S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879] (1949). The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States,* 362 U.S., at 271 [80 S.Ct., at 736].

462 U.S. at 238–239, 103 S.Ct. at 2332.

■ *Gates* also discusses the "value of corroboration of details of an informant's tip by independent police work," citing *Jones v. United States,* 362 U.S. at 269, 80 S.Ct. at 735. Here, as stated above, there was ample evidence of corroboration of the information given to Florez by Ward.

Under the test outlined in *Gates,* we are convinced that the trial court did not err in refusing to quash the warrant and exclude the evidence.

The judgment of the trial court with respect to the motion to suppress is AFFIRMED.