UNITED STATES of America

v.

Adele Diaz RIDOLF, Defendants.

No. CR. 99–114–S.

United States District Court,
M.D. Alabama,
Southern Division.

Nov. 23, 1999.

On September 5, 1999, Ridolf filed a Motion to Suppress (Doc. # 28) claiming the searches executed on her property were defective. The Magistrate Judge recommended that Ridolf's motion be denied. Ridolf then filed objections to the Magistrate Judge's Recommendation. After a careful review of the record, including a transcript of the evidentiary hearing and all of the evidence considered by the Magistrate in making her recommendation, and the objections raised by Ridolf, the court has decided to adopt in part and reject in part the Magistrate Judge's Recommendation.

## II. STANDARD OF REVIEW FOR A MAGISTRATE'S RECOM-MENDATION

A district judge reviewing a magistrate judge's proposed finding should conduct a *de novo* review of the record. *See generally* 28 U.S.C. § 636. "[Al]-though *de novo* review does not require a new hearing of witness testimony, it does require independent consideration of factual issues based on the record. If the magistrate makes findings based upon the testimony of witnesses, the district court is obliged to review the transcript or listen to a tape-recording of the proceedings." *Jeffrey S. by Ernest S. v. State Bd. of Ed. of State of Georgia,* 896 F.2d 507, 513 (11th Cir.1990).

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings. *United States v. Raddatz,* 447 U.S. 667, 680, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *see also* 28 U.S.C. § 636.

Ann Ashton Holmes, Asst. U.S. Atty., Montgomery, AL, for plaintiff.

Christine Freeman, Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

## I. INTRODUCTION

This cause is before the court on the Recommendation of the Magistrate Judge (Doc. # 58) issued on October 12, 1999, and Defendant Adele Diaz Ridolf's ("Ridolf") objections filed on October 15, 1999.

## III. FACTS

In August 1998, law enforcement officers began an investigation into Ridolf's alleged drug trafficking activities. The investigation began when a confidential informant ("CI# 1"), who had been caught with cocaine, told police that the drugs had come from Ridolf's residence. In April of 1999, another confidential informant

("CI# 2"), who, at the time, was an inmate at the Dale County Jail, told law enforcement officers that Ridolf had offered to hire him [1] to murder a man named Arthur Homes in exchanged for a quantity of cocaine. CI# 2 gave detailed descriptions of Ridolf's activities, including a narrative account of drug transactions that indicated to law enforcement that the drugs were kept in a freezer behind the home adjacent to Ridolf's property. This property is owned by Ridolf's ex-husband.

In April 1999, two more confidential informants ("CI# 3" and "CI# 4") provided additional information about Ridolf's trafficking activities. Both confidential informants gave law enforcement detailed statements regarding Ridolf's cocaine trafficking. On May 3, 1999, law enforcement orchestrated a drug transaction between CI# 3, CI# 4 and Ridolf, which, according to police, resulted in the purchase of $600 worth of cocaine.

On June 18, 1999, Magistrate Judge Charles S. Coody signed two Search Warrants for Ridolf's property. The first Search Warrant was for Ridolf's home, which is described in the Warrant as Route 4, Box 133 Rolling Hills Circle, Ozark, Dale County, Alabama ("Box 133"). The second Search Warrant was for the property adjacent to Box 133, which was owned by Ridolf's husband and is described in the Warrant as Route 4, Box 132 Rolling Hills Circle, Ozark, Dale County, Alabama ("Box 132"). The Warrant for Box 133 authorized the search of the "premises." The Warrant for Box 132 only authorized the search of the freezer/storage unit that CI# 2 had indicated was a storage area for the drugs, and trucks on the premises.

## IV. DISCUSSION

Ridolf has raised several objections to the Magistrate's Recommendation on the Defendant's Motion to Suppress. The objections refer exclusively to three categories of alleged deficiencies in the searches executed on Ridolf's and her husband's properties. First, Ridolf challenges the sufficiency of probable cause underlying the warrants; second, Ridolf challenges the search of the red horse barn located on the property described as Box 132, which belongs to Ridolf's husband, as being outside the scope of the Search Warrant issued for Box 132; and third, Ridolf challenges the search of her automobile, a Lexus, as being outside the scope of the Search Warrant issued on Box 133.

### 1. Probable Cause

■ The district court has the obligation of insuring that the magistrate issuing a search warrant had a substantial basis for concluding that probable cause existed. *See, e.g., United States v. Cancela*, 812 F.2d 1340 (11th Cir.1987). The general rule is that in order to be reasonable within the meaning of the Fourth Amendment a search warrant must be based upon probable cause. "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts[.]" *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■ The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him or her, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that evidence of a crime will be found in a particular place. *Cancela*, 812 F.2d at 1343. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697(1960).

---

1. The gender of the informant is unknown. For the purposes of style, the court has decided to use the masculine pronoun when referring to any informant individually. In no way does this suggest that the informants are actually males.

In her motion to suppress, Ridolf challenges the reasonableness of the search on the basis that there is a lack of showing of "reliability" of the informants. The standard as to the degree of reliability that must be shown in such a situation is outlined in *Gates.* To avoid "rigid" legal rules, *Gates* changed the "twopronged test" of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), into a "totality of the circumstances" test. *See Gates,* 462 U.S. at 230–35, 103 S.Ct. 2317. The first prong refers to the circumstances under which the informant obtained the information; the second prong considers the circumstances that led the officer to believe the informant was reliable. *Id.* As the Eleventh Circuit recently observed, "under the *Gates* totality of the circumstances test, the 'veracity' and 'basis of knowledge' prongs of *Aguilar,* for assessing the usefulness of an informant's tips, are not independent. They are better understood as relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for by a strong showing as to the other." *United States v. Brundidge,* 170 F.3d 1350, 1352 (11th Cir.1999) (*quoting Gates,* 462 U.S. at 233, 103 S.Ct. 2317) (internal quotes omitted).

In this case there was substantial evidence of the informants' basis of knowledge for the information they provided to law enforcement. The Magistrate found that the fact that the informants had participated in the alleged drug transactions with the defendant bolsters the reliability of their testimony. The informants gave a detailed description of the drug activities in question. They provided Agent Taylor with lengthy narratives of the defendant's habits, descriptions of her *modus operandi,* and physical descriptions of her property, not to mention accounts of their first hand experience buying drugs from her.

The general rule is that an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the CI's] tip to greater weight than might otherwise be

the case." *Gates,* 462 U.S. at 234, 103 S.Ct. 2317. In addition to providing the basis of the informants' knowledge, the level of detail meant that the informants were unlikely to lie, because "if the warrant issued, lies would likely be discovered in short order and favors falsely curried would dissipate rapidly." *United States v. Foree,* 43 F.3d 1572, 1576 (11th Cir.1995)(creating circumstances under which it is unlikely to lie is a way to corroborate informant's veracity).

When applying the *Gates* test, the Eleventh Circuit has indicated that the "CI's [confidential informants'] basis of knowledge [ can] ma[ke] up for any weaknesses in the CI's veracity." *Brundidge,* 170 F.3d at 1350. This reflects the general rule laid down in *Gates* that such an assessment is meant to judge the totality of the circumstances and not apply rigid legal rules. Thus, the court could stop its inquiry at this point and simply conclude that there was probable cause based upon the demonstrated knowledge of the informants, the fact that they were participates in the alleged transactions, and the fact that there were multiple informants telling the police essentially the same thing. However, there is also evidence tending to support a finding of "veracity."

Ridolf asserts that such evidence is not present. In her Objection to the Magistrate's Ruling, Ridolf cites the court to *Walden v. Carmack,* 156 F.3d 861, 870 (8th Cir.1998) for the proposition that first time informants, whose information is uncorroborated by independent police detective work, are not "reliable." The passage from *Carmack,* which is a civil case, that Ridolf apparently is quoting from is

When an affidavit contains information provided by a confidential informant, a key issue that must be addressed is the reliability of that informant. Information may be sufficiently reliable to support a probable cause determination if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence. If the information provided by the informant is shown

to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.

*Id.* at 870. Ridolf cites the court to a non-binding civil case when there are a number of binding criminal cases which address the issue. The inference Ridolf apparently wishes to draw from the above quoted passage, although Ridolf does not clearly state which legal rule she relies upon, is that absent corroboration a first time informant is per se unreliable. This argument has been addressed and rejected by the Eleventh Circuit in *Brundidge:* "we think requiring independent police corroboration—as a per se rule in each and every case—is contrary to *Gates* and other precedent for two reasons. First ... *Gates* criticizes per se rules for the determination of probable cause. Second, independent police corroboration has never been treated as a requirement in each and every case." *Id.* at 1353 (citations omitted). Moreover, the court has read *Carmack.* and can find nothing that would indicate that such was the rule in the Eight Circuit. ▮ Furthermore, it is not true that all of the information was uncorroborated by

law enforcement. For example, the Affidavits in support of the Search Warrants describe a police operation involving a cocaine buy and the informants. When questioned at the Magistrate's hearing on the Motion to Suppress, Agent Taylor made it clear that he "had first hand knowledge" of these events and that he was "involved on [sic] that operation." *See Transcript of Evidentiary Hearing 9/21/99* at 52. Although such corroboration is not necessary in every case, *Gates* discusses the "value of corroboration of details of an informant's tip by independent police work," *citing Jones v. United States,* 362 U.S. at 269, 80 S.Ct. 725; *see also, United States v. Sweeting,* 933 F.2d 962 (11th Cir.1991). Here a law enforcement officer testified that he observed a drug buy orchestrated by the police, which involved the informants and Ridolf. This is strong evidence that the informants were telling the truth.[2]

For the reasons outlined above, the court therefore adopts and agrees with the Magistrate Judge's finding that there was a sufficient basis in the information before the Magistrate to find that there was probable cause for the issuance of the search warrants.[3]

---

**2.** In several of her objections, Ridolf claims that this evidence is unpersuasive because "no officer saw a meeting actually take place between Mrs. Ridolf and the informants." *Defendant's Objection to the Recommendation of the Magistrate Judge* at 1. Even if this were true, the Magistrate correctly pointed out "both [informants] were searched before their meeting with the defendant .... When they were searched, they had money provided by the government, but they no [sic] drugs. When then [sic] returned from their meeting with the defendant, they were searched again. They gave Taylor a 'brown pill bottle containing what later was determined to be powder cocaine' [ ] purchased from the defendant." *Magistrates Recommendation* at 3.

Ridolf apparently contends that this evidence does not support a finding of veracity sufficient to establish probable cause. First, she asserts that this transaction was unobserved. Second, she asserts that no officer could confirm that the brown pill bottle was actually purchased from the defendant. Even if these assertions were true, they would not

vitiate a finding of probable cause. Ridolf apparently thinks that because the transaction was unobserved it does not *prove* that Ridolf actually was involved in the buy. This may be true. Although the evidence might not prove beyond a reasonable doubt that Ridolf actually sold drugs to the defendants, it does tend to support a finding that the informants were credible. Given the strict controls placed upon the informants by the government during the transaction, the fact that the government searched them before and after the transaction, and monitored them during the transaction, it strongly suggests that these informants were telling the truth.

**3.** The court finds its unnecessary to address the question of whether the information was a statement against penal interest. There is sufficient evidence in the record to support a finding of probable cause without need to address this question. Ridolf has objected that such information was not a statement against penal interest. Because the court

### 2. The Red Horse Barn

As noted above, two search warrants were issued in this case. The first search warrant covers the defendant's husband's property, which is described as Box 132. Ridolf asserts that the Search Warrant for Box 132 was limited, by its own terms, to the freezer/storage units and trucks at that location. Thus, Ridolf asserts that when law enforcement also searched a red horse barn, they exceeded the scope of the search warrant. The court agrees.

As a preliminary matter, the Magistrate Judge found that Mr. Ridolf consented to the search of Box 132, including, apparently, the red horse barn. Specifically, the Magistrate found that "Robert Ridolf ["the husband"] testified that the warrant on Box 132 was confined to the freezer and storage units, which he interpreted to have been a reference to a cold storage warehouse that's at the back of the property. The husband had no objection to the search. He also testified that he didn't observe the entire search of his or the defendant's premises, but that a red horse barn was searched. Robert Ridolf [i.e., the husband] also stated that, upon being shown the affidavit and warrant, he freely answered Taylor's questions and told Taylor, 'It appears legal to me, go ahead' [ ] giving the agents consent to search his premises." *Magistrate's Recommendation* at 3–4. The court does not agree that consent was given to this search.

Although the safeguards that attend the waiver of a Fourth Amendment right appear to differ from those that govern the waiver of other constitutional rights, the question of consent to search is generally analyzed under the rubric of constitutional waiver, and, the general rule is that such a waiver must be "voluntary". *See Schneckloth v. Bustamonte*, 412 U.S. 218, 241, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). ("Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional

need not consider this portion of the Recom-

guarantee against unreasonable searches and seizures."). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *United States v. Butler*, 102 F.3d 1191, 1197 (11th Cir.), *cert. denied*, 520 U.S. 1219, 117 S.Ct. 1712, 137 L.Ed.2d 836 (1997) (*quoting Bustamonte* 412 U.S. at 233, 93 S.Ct. 2041) (internal quotations omitted).

■■■ Consent is not voluntary if given only in acquiescence to lawful authority: "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Bumper v. State of North Carolina*, 391 U.S. 543, 550, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *see also United States v. Garcia*, 890 F.2d 355, 360 (11th Cir.1989) (dicta).

■■■ For this reason, Mr. Ridolf's statement, "It appears legal to me, go ahead" did not operate as an effective waiver. The court finds that no consent was given to conduct a search beyond what was authorized by the warrant and there was no waiver of Fourth Amendment rights.

The question remains whether the search of the red horse barn was outside the scope of the Search Warrant. The Search Warrant for the property known as Box 132 authorized the search of "Freezer/Storage Unit and trucks on the premises ...." *Def. Exhibit B*. The question therefore is whether the agents exceeded the scope of the warrant when they searched the red horse barn, and, then, if so, whether the evidence obtained should be suppressed.

The "manifest purpose" of the "particularity requirement of the Fourth Amend-

mendation, that objection is rendered moot.

ment" is "to prevent general searches." *United States v. Leon,* 468 U.S. 897, 963, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (Stevens, J., concurring). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison,* 480 U.S. 79, 83, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); *United States v. Jenkins,* 901 F.2d 1075, 1081 (11th Cir.1990).

■ In this case the terms of the warrant clearly limited the scope of the search to the freezer/storage unit. The affidavit supporting the warrant refers to these freezer/storage units as being "behind the Ridolf residence." *See Taylor Affidavit* at 3. The nature of the freezer/storage units had been described to law enforcement by CI# 2. There can be no question that, absent exigent circumstances, the warrant so describing such a specific place to be searched was limited to that place. *See Garrison,* 480 U.S. at 87, 107 S.Ct. 1013 ("In turn, the scope of the warrant hinges on the extent of the officers' knowledge of the premises, based on the information available at the time that they executed the warrant"). Since the freezer/storage unit was not in the red horse barn, it was objectively unreasonable for the agents to search the red horse barn. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 394 n. 7, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (stating that the Fourth Amendment strictly confines an officer executing a search warrant to the limits set by the warrant). This being the case, the court rejects the Magistrate's Recommendation regarding that portion of the search. The court finds that the evidence obtained from the red horse barn should be suppressed.

### 3. *The Lexus*

■ As noted above, part of the search of Box 133 included defendant's vehicle, a Lexus. The Magistrate found that the Search Warrant describing the "premises" included the vehicle parked thereon.

Many courts have held that a warrant describing the premises includes the vehicles parked on the property so described. In *United States v. Singer,* 970 F.2d 1414, 1417–18 (5th Cir.1992), the Fifth Circuit affirmed a trial court's decision refusing to suppress evidence obtained from a search of two automobiles located on the property of a residence for which a search warrant was issued. In affirming the lower court, the Circuit Court explained that "[t]his court has consistently held that a warrant authorizing a search of 'the premises' includes vehicles parked on the premises." *Singer,* 970 F.2d at 1418 (citing *United States v. Cole,* 628 F.2d 897, 899 (5th Cir. 1980) (additional citations omitted), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981)).

There is binding precedent in this circuit holding that a search of the premises includes vehicles parked on the premises. *See United States v. Napoli,* 530 F.2d 1198, 1200 (5th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976) ("We conclude that the search of the camper was authorized by the warrant. We think that the reference to 'on the premises known as 3027 Napoleon Avenue' was sufficient to embrace the vehicle parked in the driveway on those premises.").

Those reasons apply in the instant case. The Search Warrant describing the premises as Route 4, Box 133 Rolling Hills Circle, Ozark, Alabama, was sufficient to embrace the Lexus parked in the driveway on those premises. For this reason, the court adopts the Magistrate's Recommendation as to the search of the Lexus.[4]

---

**4.** Because the court has addressed the question whether the search of the Lexus was permissible, Ridolf's objection that the Magistrate Judge "erred in finding that no items were removed from Mrs. Ridolf's Lexus" is rendered moot.

## V. *CONCLUSION*

In accordance with this Memorandum Opinion, the Recommendation of the Magistrate Judge is adopted in part and rejected in part, and it is ORDERED as follows:

1. The Defendant's Motion to Suppress is hereby GRANTED as to any and all evidence seized from the red horse barn located on the property described as Route 4, Box 132, Rolling Hill Circle, Ozark, Dale County, Alabama.

2. In all other respects, the Defendant's Motion to Suppress is hereby DENIED.