[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

—————————————————

No. 04-11431

—————————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 1, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-20786-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH L. WILLIAMS,
a.k.a. Willie Clarkson, etc.

Defendant-Appellant.

—————————————————

Appeal from the United States District Court
for the Southern District of Florida

—————————————————

(September 1, 2005)

Before BARKETT and MARCUS, Circuit Judges, and GEORGE*, District Judge.

PER CURIAM:

_____

*Honorable Lloyd D. George, United States District Judge for the District of Nevada,
sitting by designation.

Joseph Williams appeals his convictions and 360-month sentence, imposed after a 2-week jury trial, for possessing with intent to distribute five or more grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 1); two counts of possessing with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts 2 and 7); three counts of possessing with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Counts 3, 4, and 8); and possessing a Remington .38 caliber rifle and approximately 240 rounds of ammunition, having previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count 6).[1]

On appeal, Williams argues the following: (1) the district court erred by denying his pretrial motion to suppress and request for a Franks[2] evidentiary hearing to consider testimony on alleged misrepresentations in the affidavit supporting a search warrant for his apartment; (2) the district court erred by denying his motion to dismiss the superseding indictment for grand jury abuse and prosecutorial misconduct; (3) there was insufficient evidence to support his convictions; and (4) the district court erred by

---

[1] The jury acquitted Williams on Count 5, which charged him with possessing a firearm (a Remington .38 caliber rifle) in furtherance of a drug trafficking crime, as set forth in Count 4 of the superseding indictment, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

[2] Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

denying his motions for a new trial based on newly discovered evidence and the interests of justice.[3]

After thorough review of the record and careful consideration of the parties' arguments, we affirm.

I.

We review for clear error a district court's factual findings on a motion to suppress evidence, United States v. Newbern, 731 F.2d 744, 747 (11th Cir. 1984), as well as a district court's decision that omissions or misrepresentations in a warrant affidavit were not reckless or intentional, United States v. Cancela, 812 F.2d 1340, 1343 (11th Cir. 1987). This Court reviews the denial of a motion to dismiss the

_____

[3]Williams also challenges various evidentiary rulings and argues the district court erred in limiting the scope of cross-examination and his closing argument. Based on our thorough review of the record, we can find no abuse of discretion on any of these grounds. See United States v. Brown, 415 F.3d 1257 (11th Cir. 2005) (reviewing the district court's rulings on the admissibility of evidence for abuse of discretion and giving "considerable deference" to the district court's decision); United States v. Abraham, 386 F.3d 1033, 1035 (11th Cir. 2004) (reviewing district court's rulings on the admissibility of Fed. R. Evid. 404(b) evidence for abuse of discretion), petition for cert. filed, No. 04-9334 (Feb. 16, 2005); United States v. Matthews, 168 F.3d 1234, 1244 (11th Cir.) ("Limitations on the scope and extent of cross-examination are matters expressly committed to the sound discretion of the trial judge and we review such decisions only for a clear abuse of discretion."), amended on other grounds, 181 F.3d 1205 (11th Cir. 1999). We also conclude the district court did not abuse its discretion by denying Williams's motions for mistrial based on the evidentiary rulings he challenges here. See United States v. Perez, 30 F.3d 1407, 1410 (11th Cir. 1994) ("The decision of whether to grant a mistrial lies within the sound discretion of a trial judge as he or she is in the best position to evaluate the prejudicial effect of improper testimony."); see also United States v. Chastain, 198 F.3d 1338, 1352 (11th Cir. 1999) (noting that Court "will not overturn a lower court's refusal to grant a mistrial where the record shows that appropriate curative instruction were given, unless the evidence is so highly prejudicial as to be incurable by the trial court's admonition" (citation and internal quotation marks omitted)).

indictment for abuse of discretion. See United States v. Waldon, 363 F.3d 1103, 1108 (11th Cir.), cert. denied,--- U.S. ---, 125 S. Ct. 208, 160 L. Ed. 2d 112 (2004). We review de novo challenges to the sufficiency of the evidence, resolving all reasonable inferences from the evidence in favor of the jury's verdict. See United States v. Rudisill, 187 F.3d 1260, 1267 (11th Cir. 1999). The evidence is sufficient where a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt. United States v. Lluesma, 45 F.3d 408, 409 (11th Cir. 1995). Finally, we review the denial of a motion for new trial for abuse of discretion. See United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003) (denial of motion for new trial based on newly discovered evidence); United States v. Hall, 854 F.2d 1269, 1270-71 (11th Cir. 1988) (denial of motion for new trial based on interests of justice).

## II.

First, Williams challenges the district court's denial of two of his pre-trial motions: (1) a motion to suppress physical evidence seized, and statements made, during the search of Williams's apartment on January 11, 2002, as well as a request for an evidentiary hearing, pursuant to Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), to challenge the truthfulness of the affidavit in support of the warrant issued for his apartment on January 11, 2002; and (2) a motion to dismiss the

4

superseding indictment for prosecutorial misconduct and abuse of the grand jury after the filing of the initial indictment. The magistrate judge conducted evidentiary hearings on both motions and recommended denying them. The magistrate judge also determined that Williams had not established that an additional Franks evidentiary hearing was warranted.

Williams's first motion to suppress concerned narcotics and a firearm seized, pursuant to the execution of a search warrant, at 911 N.W. 7th Court #11 in Miami, on January 11, 2002. On appeal, Williams primarily argues that the affidavit in support of the warrant did not establish probable cause because it contained false statements that were made deliberately or in reckless disregard of the truth. He also urges that the district court made an inadequate inquiry into the alleged falsities in the affidavit and should have held a Franks evidentiary hearing.

In the search warrant affidavit, Officer Dexter McGahee of the City of Miami Police Department ("MPD"), stated that on January 10, 2002, he received an anonymous tip that a black male known as Joseph Williams, or "Crazy Joe," who was wanted for murder and several drug-related shootings, was living in the area of N.W. 8th Street Road and N.W. 7th Court. Based on the tip, McGahee conducted surveillance and, on the evening of January 11, 2002, observed Williams exit Apartment #11 at 911 N.W. 7th Court and walk towards Reeves Park.

Officer McGahee alerted other MPD officers, including Officers Prosper and Suarez, who responded to Reeves Park and observed Williams sitting on a bench, under a pavilion. In the affidavit, McGahee stated the following:

> Upon arrival Officer Suarez and Officer Prosper observed the subject sitting in Reeves Park underneath a pavilion. As Officer Suarez and Prosper approached, the subject stood up and discreetly dropped a black plastic bag from his right hand. The subject was then detained by Officer Prosper. Officer Suarez then recovered the black bag from the ground which contained (1) clear plastic bag with a suspected rock cocaine cookie, (1) clear plastic bag containing (136) pink tinted plastic baggies of suspected rock cocaine, . . . (1) clear plastic bag containing (3) pink tinted plastic bags of suspected powder cocaine[, and] (1) large plastic ziplock bag containing (50) manila envelopes with suspected marijuana inside. The subject was arrested and transported to the [MPD] Central Station holding facility.

(emphasis added). In addition to the foregoing evidence seized during Williams's arrest, Officer McGahee's affidavit described that a trained drug detector dog was brought to the outside door of 911 N.W. 7th Court #11, where it alerted to the presence of narcotics.

Based on the dog alert, Williams's earlier arrest, and the seizure of the black bag containing narcotics, law enforcement obtained a search warrant for Apartment #11. Upon executing the warrant, officers discovered a large bag of marijuana, powder cocaine packaged in the same type of pink baggies found in the black plastic bag recovered in Reeves Park, a .38 caliber rifle with a scope, a bulletproof vest, a digital scale suitable for weighing drugs, ammunition for a 9 millimeter firearm which could

6

be used in the rifle, and other boxes of ammunition. The officers also found brass knuckles and a large water jug stuffed with coins and currency in small denominations, totaling $1,307.00. In the bedroom, the officers found stapled manila envelopes of marijuana matching the type of envelopes recovered from the black plastic bag at Reeves Park. The officers also recovered Williams's car insurance card, his driver registration and auto tag receipt, his birth certificate, and numerous other bills, receipts and correspondence bearing Williams's name.

The magistrate judge found it unnecessary to conduct a Franks hearing on Williams's challenge to the veracity of McGahee's affidavit because, inter alia, even if the court disregarded the alleged falsity in the search warrant affidavit -- that both officers (as opposed to just Suarez, as Williams contended) saw him drop the black plastic bag -- other evidence averred in the affidavit was sufficient to support probable cause.

A warrant affidavit violates the Fourth Amendment when it contains omissions or inconsistencies "made intentionally or with a reckless disregard for the accuracy of the affidavit." United States v. Martin, 615 F.2d 318, 329 (5th Cir. 1980).[4] Omissions that are not reckless, but are instead negligent, id., or insignificant and immaterial,

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

United States v. Reid, 69 F.3d 1109, 1114 (11th Cir. 1995), will not invalidate a warrant. Indeed, even intentional or reckless omissions will vitiate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause. See United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990).

Affidavits supporting arrest warrants are presumptively valid. See Franks, 438 U.S. at 171, 98 S. Ct. at 2684. A challenge under Franks must: (1) be more than conclusory; (2) contain allegations of deliberate falsehood or of reckless disregard for the truth; (3) be accompanied by an offer of proof; (4) specify the portion of the warrant affidavit that is claimed to be false; and (5) be accompanied by a statement of supporting reasons. Id. Williams's request for an evidentiary hearing did not satisfy the Franks standard. Although he specified the portion of the warrant affidavit that he challenged and arguably included an offer of proof (the affidavits), the request made no allegation of deliberate indifference or reckless disregard for the truth, as required under Franks. Rather, Williams just disagreed with the facts as they were stated in McGahee's warrant.

Moreover, even if we assumed that Williams satisfied the Franks requirements, the magistrate judge found, after discounting the challenged statement in the arrest affidavit, that there was enough other evidence to establish probable cause. The other evidence included the drug dog's alert, Williams's earlier arrest, and the seizure of the

black bag full of narcotics. In <u>Franks</u>, the Supreme Court held that after a defendant meets the five requirements for an evidentiary hearing, he <u>still</u> is not entitled to one if, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." <u>Franks</u>, 438 U.S. at 171, 98 S. Ct. 2684.

In short, Williams did not satisfy the requirements of <u>Franks</u> and was not entitled to an evidentiary hearing. Moreover, even if his request was sufficient under <u>Franks</u>, he was not entitled to a hearing because there was enough independent evidence supporting a finding of probable cause.

As for Williams's motion to dismiss the superseding indictment, the magistrate judge ordered the government to submit, <u>in camera</u>, certain grand jury testimony taken after the issuance of the original indictment. At a subsequent hearing on the motion, Williams argued that the prosecutor improperly used the grand jury to gather more evidence through the questioning of witnesses about Counts 1 through 6.[5] Based on the <u>in camera</u> review, and after taking legal argument on the matter, the magistrate judge found the following:

---

[5]Counts 1 through 6, which were included in the initial indictment, concerned Williams's criminal activity on January 11, 2002 and the narcotics and firearm evidence seized at Reeves Park and 911 N.W. 7th Court #11. The superseding indictment added Counts 7 and 8, which related to criminal activity on September 18, 2002, occurring at or around 1177 N.W. 8th Street Rd. #4, also in Miami.

[T]he primary and dominant purpose of the questioning was to investigate uncharged crimes. To the extent that there was questioning regarding the charged offenses, the undersigned finds that such questioning was incidental and necessary with respect to the continuing investigation, and served to clarify various statements made by the witnesses with respect to the uncharged offenses, to establish the relationship between the defendant and the witness, and/or to assess the truthfulness and reliability of the information provided with respect to the uncharged offenses.

Moreover, the court concluded that Williams failed to establish that the government had presented perjured testimony to the grand jury, and concluded that the government was under no obligation to present exculpatory evidence to the grand jury.

We affirm the district court's adoption of the magistrate judge's ruling that the challenged testimony was not perjurious and we observe that the government is under no duty to bring exculpatory evidence to the grand jury's attention. See United States v. Williams, 504 U.S. 36, 51-55, 112 S. Ct. 1735, 1744-46, 118 L. Ed. 2d 352 (1992); see also United States v. Gilbert, 198 F.3d 1293, 1304 (11th Cir. 1999) ("[I]t is settled law that the prosecution is not required to include exculpatory evidence in its presentation to the grand jury. . . . The obligation to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), applies only in regard to trials." (citations omitted)).

III.

Williams challenges his convictions on Counts 1 through 3, arguing that he presented testimony of numerous witnesses who refuted the testimony presented by the

10

government that Williams was seen in possession of the black bag prior to his arrest in Reeves Park. He also highlights that the government did not present any corroborating fingerprint evidence to show that Williams had ever touched the bag. He challenges his convictions on Count 4 and Count 6, arguing the government failed to show that he had dominion, possession and/or control over the apartment at Apartment #11 at 911 N.W. 7th Court or the drugs and firearm evidence found in it. Finally, Williams contends the evidence was insufficient to support his convictions on Count 7 and Count 8 because the government established only his presence at 1177 N.W. 8th Street Rd. #4, and not that he had dominion, possession and/or control over the premises or the drugs found therein. We are not persuaded.

As for Counts 1 through 4, Count 7, and Count 8, "[i]n order to obtain a conviction under 21 U.S.C. § 841(a)(1), the Government must establish the existence of three elements: (1) knowledge (of one's possession); (2) possession of a controlled substance; and (3) intent to distribute that substance." United States v. Wilson, 183 F.3d 1291, 1299 n.13 (11th Cir. 1999). As for his challenge to his conviction on Count 6, because Williams stipulated that he was a convicted felon and does not challenge that the gun traveled in interstate commerce, the only contested issue here is whether he "was in knowing possession" of the gun. See United States v. Deleveaux, 205 F.3d 1292, 1296–97 (11th Cir. 2000) ("To establish a violation of § 922(g)(1), the

11

government must prove . . . (1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce.").

In Williams's sufficiency challenge to his convictions on Counts 1 through 4 and Count 6 -- which were based on Williams's criminal conduct in Reeves Park and the narcotics and firearms evidence found at 911 N.W. 7th Court #11 -- he primarily argues that the government did not establish he possessed the narcotics found in the black bag or seized from the apartment at 911 N.W. 7th Ct.[6]

Although Williams highlights that he presented witnesses who testified that he was <u>not</u> carrying anything in Reeves Park, the jury, by its verdict, found the testimony of the government's witnesses credible including that Williams was carrying something as he furtively walked to Reeves Park and that he dropped the black bag after he got up from the bench in the Park. Credibility determinations are the exclusive province of the jury. See United States v. Calderon, 127 F.3d 1314, 1325 (11th Cir. 1997). By returning a guilty verdict, the jury found the testimony of the government's

---

[6]To the extent his argument is that the government did not establish intent to distribute, the jury reasonably could have inferred an intent to distribute based on the quantity of drugs involved, the manner in which they were packaged, and the paraphernalia, such as a digital scale, recovered at the apartment. Cf. United States v. Perez-Tosta, 36 F.3d 1552, 1560 (11th Cir. 1994) (rejecting sufficiency challenge to evidence establishing intent to distribute, given large quantity of cocaine involved, from which the jury was free to infer an intent to distribute); United States v. Poole, 878 F.2d 1389, 1392 (11th Cir. 1989) (finding following circumstances sufficient for jury to infer intent to distribute: "quantity of the cocaine, the sophisticated scale, and the equipment used to dilute the purity of the cocaine and to separate large quantities into smaller quantities for retail purposes").

witnesses credible, and its determination must be accepted unless the testimony was incredible as a matter of law. Id.

Moreover, the government presented ample evidence connecting Williams to the 911 N.W. 7th Court apartment and the drugs and firearm seized there, as well as showing his constructive possession of the contents of the apartment, including: (1) when he was arrested in Reeves Park, Williams was in possession of a key to the apartment and thus had unrestricted access, cf. United States v. Harris, 20 F.3d 445, 453-54 (11th Cir. 1994) (holding that defendant's unrestricted access to house permitted jury to reasonably infer that he exercised control over house and therefore maintained constructive possession over cocaine found in the house); (2) when law enforcement executed a search warrant at the apartment, the officers recovered William's car insurance card, his driver registration and auto tag receipt, his birth certificate, and numerous other bills, receipts and correspondence bearing Williams's name; and (3) during the search, law enforcement also recovered narcotics in the same type of pink baggies and stapled manila envelopes as the ones found in the black bag seized at Reeves Park.

Additionally, fellow Federal Detention Center ("FDC") inmate Treavor "Trevin" Joseph testified that Williams had described his girlfriend's apartment (the 911 N.W. 7th Ct. apartment) and indicated that he stayed with his girlfriend there and received

deliveries of drug sale proceeds from "his workers." Williams also told Joseph he kept

a bulletproof vest and a rifle in a closet, in case someone tried to break in and steal

"<u>my</u> stuff." On this record, the jury reasonably could have inferred Williams's

constructive possession over the apartment and the drugs and firearm evidence found

in it.[7]

Simply put, we are satisfied the government presented ample evidence from

which a reasonable trier of fact could, and did, find guilt beyond a reasonable doubt

on all counts for which Williams was convicted.

V.

Finally, Williams argues the district court erred by denying a motion for new

trial based on newly discovered evidence, which was filed over one month after the

---

[7] Based on similar reasoning, we are unpersuaded by Williams's last sufficiency argument, which also concerns the government's failure to prove constructive possession. Williams argues the evidence was insufficient to support his convictions on Counts 7 and 8 because the government established only his presence at the 1177 N.W. 8th Street Rd. apartment, where he was arrested on September 18, 2002. The government's evidence on Williams's constructive possession of the drugs in the 8th Street apartment included: (1) Williams's spontaneous statement at the time of his arrest outside of the building that Jamal Brown lived in Apartment #4 and that he (Williams) "had nothing to do with" the apartment; (2) recovery of the same kind of pink baggies and small manila envelopes found in the black bag at Reeves Park and the 911 N.W. 7th Ct. apartment; (3) recovery of several pieces of clothing and a pair of sneakers that the officers had seen Williams wearing on previous occasions; (4) recovery of Williams's driver's license; (5) Williams told fellow FDC inmate Joseph that when he was arrested on September 18, 2002, he was at "his place" on N.W. 8th Street Road, bagging up powder cocaine, crack cocaine, and marijuana, with Brown acting as a lookout; and (6) Williams also told Joseph that he rented the apartment in Brown's name, and that he was "going to put everything on" Brown. The jury reasonably could have inferred from all of this evidence that Williams constructively possessed the drugs found in the 8th Street apartment.

14

jury's verdict, and another motion for new trial based on the interests of justice, which was filed over three months after the jury's verdict. Both motions were filed pursuant to Federal Rule of Criminal Procedure 33.[8] In the motion based upon newly discovered evidence, Williams stated that after trial, Treavor "Trevin" Joseph -- one of the fellow FDC inmates who testified about Williams's incriminating statements -- told three other FDC inmates that he fabricated his testimony in order to reduce his own sentence. In support of his motion, Williams submitted the affidavits of the three FDC inmates. In his second motion, based on the interests of justice, Williams argued he had just learned that Nathaniel Blash, who Williams tried to subpoena for trial, had been warned by law enforcement not to testify.

---

[8] Federal Rule of Criminal Procedure 33 provides the following, inter alia:

**(a) Defendant's Motion**. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.
**(b) Time to File.**
**(1) Newly Discovered Evidence.** Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
**(2) Other Grounds.** Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7- day period.

Fed. R. Crim. P. 33.

15

At an evidentiary hearing on the motions, the district court considered testimony from the three FDC inmates, Nathaniel Blash, and Williams's mother. Thereafter, the district court denied both motions.

Motions for a new trial are disfavored, and we have instructed that district courts should use "great caution" in granting a new trial motion based on newly discovered evidence. See Jernigan, 341 F.3d at 1287. To obtain a new trial based on newly discovered evidence, a defendant must show that: (1) the evidence was discovered after trial; (2) the defendant's failure to discover the evidence was not due to a lack of due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to issues before the court; and (5) the evidence is such that a new trial would probably produce a different result. Id. Failure to meet any one of these elements defeats a motion for a new trial. See United States v. Starrett, 55 F.3d 1525, 1554 (11th Cir. 1995).

The district court correctly denied Williams's motion for a new trial based on newly discovered evidence. Although the three FDC inmates' testimony was "newly discovered" and the motion was timely, the district court made the following factual findings in denying the motion: (1) Elroy Phillips was not credible because his carefully maintained jailhouse journal did not contain notations of any conversations with Joseph, although he routinely noted all conversations or contacts of any

16

significance with FDC inmates, and Phillips was now employing in his own case the same defense as Williams (that he was set up by Miami law enforcement officers who planted evidence and lied), thus rendering his testimony suspect; (2) Edmund Rance had disavowed the statements he made in his affidavit submitted in support of the new trial motion; and (3) Lavan Walker's testimony was incredible due to his admitted perjury in his own case proceedings, and his close association with Williams. Moreover, the district court found Williams failed to show that the newly discovered evidence was material and would have produced a different result at trial. Williams has not shown that the district court abused its discretion by denying his motion.

We likewise find no error in the district court's decision on Williams's motion for a new trial based on the interests-of-justice standard. The jury returned its verdict on July 24, 2003 and Williams filed his motion on December 3, 2003. Since Williams's motion was not based on newly discovered evidence, it had to be filed within 7 days of the jury's verdict. See Fed. R. Crim. P. 33(b)(2). A district court lacks jurisdiction to entertain new trial motions, including those based on the interests-of-justice standard, not timely filed. See United States v. Bramlett, 116 F.3d 1403, 1405 (11th Cir.1997) (holding that district courts lack jurisdiction to grant a new trial using the interests-of-justice standard unless the motion is filed within seven days after

17

return of the guilty verdict or within any extension granted by the trial judge within the seven-day period). Thus, the district court did not abuse its discretion on this basis.[9]

In sum, we can find no reversible error and therefore affirm the convictions in all respects.

**AFFIRMED.**

---

[9] Williams's only sentencing argument is based on <u>Blakely v. Washington</u>, 542 U.S. ----, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and <u>United States v. Booker</u>, 543 U.S. ---- , 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Because Williams failed to raise his <u>Blakely/Booker</u> challenge in the district court, our review is for plain error only. <u>See</u> <u>United States v. Williams</u>, 408 F.3d 745, 748 (11th Cir. 2005). After thorough review, we cannot find plain error -- based on either <u>Booker</u> constitutional error or <u>Booker</u> non-constitutional error -- resulting from Williams's career-offender enhancement, pursuant to U.S.S.G. § 4B1.1.