**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Hector LLUESMA, Pédro Cruz,
Defendants–Appellants.**

**No. 93–4629.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 22, 1995.

M. Barbara Amaro, Law Office of Mark Alan Levine, Miami, FL, for appellant Cruz.

Eric M. Cohen, Law Offices of Eric M. Cohen, Miami, FL, for appellant Lluesma.

Roberto Martinez, U.S. Atty., Linda Collins Hertz, Jeanne M. Mullenhoff, Geoffrey B. Brigham, Asst. U.S. Attys., Miami, FL, for appellee U.S.

nation is *a novel application of this statutory*          *exception."*

Before KRAVITCH and HATCHETT, Circuit Judges, and CLARK, Senior Circuit Judge.

HATCHETT, Circuit Judge:

The appellants, Pedro Gustavo–Cruz and Hector Lluesma, challenge the sufficiency of the evidence supporting their convictions for conspiring to export stolen construction vehicles. Although the evidence is sufficient to support the conviction of Lluesma, the evidence is insufficient to support the conviction of Cruz. Thus, we affirm as to Lluesma and reverse as to Cruz.

## FACTS

The government alleged that Cruz and Lluesma participated as low level assistants in a criminal organization that acquired and exported stolen automobiles and construction vehicles to Venezuela.

In mid-October, 1992, Oscar Capote, a mid-level manager in the enterprise, obtained a stolen heavy-duty construction loader worth approximately $118,000. A backhoe could not fit through the doors of the rented warehouse that housed the stolen goods, so Capote paid Lluesma to remove the front bucket of the backhoe. Cruz later helped remove the roof of the backhoe with a welding torch to allow it to fit into a 40 foot shipping container. Later, several other conspirators tried to export the backhoe, but state officials foiled their attempt.

Notwithstanding the interference of law enforcement officers, the conspirators continued with their enterprise. The organization paid Cruz and others to remove company signs from the side of a different stolen combination loader valued at approximately $92,000. The other conspirators then moved the loader into a shipping container at the warehouse, and Cruz closed the rear doors of the container, locking and sealing them.

A coconspirator towed the container about 100 to 200 feet away from the warehouse. Capote, Cruz, and Lluesma then left the warehouse and proceeded to a nearby restaurant that served as a meeting place for members of the conspiracy. Cruz exited the restaurant with the same coconspirator who drove the truck from the warehouse, and rode with him to an empty shipping container parked about two blocks from the warehouse. The coconspirator connected the container to the truck and drove it near the warehouse. Later that day, surveillance officers observed Capote, Lluesma, and Cruz riding around the area in an automobile, apparently conducting counter-surveillance. When Capote spotted a task force surveillance truck, Cruz, Lluesma, and Capote returned to the restaurant.

Later that day, surveillance officers saw Lluesma driving a stolen 1993 white Toyota Forerunner that had been stolen five days earlier in Miami. A piece of bumper sticker covered a punched out rear door lock. Lluesma parked the car near several other stolen cars located about five blocks south of the warehouse. Subsequently, a coconspirator drove the Toyota back to the warehouse and parked it outside. Two coconspirators then drove a stolen 1993 Jeep Cherokee to the warehouse. One of the coconspirators exited the Cherokee and started to enter the Toyota. At that moment, law enforcement officers arrested the two coconspirators.

As the arrests were being made, a car containing Capote, Lluesma, and Cruz, arrived at the scene. When the three saw the law enforcement officers, they attempted a quick departure, but law enforcement officials blocked their escape.

A jury convicted Cruz and Lluesma for conspiracy to export stolen construction equipment and motor vehicles, in violation of 18 U.S.C. § 371. Cruz and Lluesma each attack the sufficiency of the evidence supporting their convictions.

## STANDARD OF REVIEW

■ This court reviews sufficiency of evidence claims in the light most favorable to the government with all reasonable inferences and credibility choices made in the government's favor, to determine whether a reasonable fact-finder could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt. *United States v. Keller,* 916 F.2d 628, 632 (11th Cir.1990), *cert.*

*denied,* 499 U.S. 978, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991).

## DISCUSSION

A. *Evidence supporting Lluesma's conviction*

█ Lluesma contends that the evidence failed to show that he knew the stolen vehicles were to be exported as 18 U.S.C. § 371 requires. Thus, he argues that his conviction for conspiring to export off-highway mobile equipment and motor vehicles cannot stand.

The government presented the following evidence at trial. Lluesma removed a bucket from a stolen 1992 John Deere loader at the request of codefendant Oscar Capote in exchange for $100; he helped remove the roof of the loader so that it would fit into a shipping container; and he and others closed the doors of the container housing the loader. After they closed the container, Capote mentioned that they needed to hurry to deliver the container to the port.

About one month later, law enforcement officers observed Lluesma at a strategy meeting at a restaurant and at various locations with other coconspirators. He also drove a stolen motor vehicle with a bumper sticker covering a punched out lock; and he examined the hood of a similar vehicle with a similar disguise over the punched-out lock. Finally, the government proved that Lluesma conducted counter-surveillance, looking around when driving with the other conspirators and informing the conspirators when law enforcement officers were nearby.

█ From our review of the record, we conclude that the evidence is sufficient to show that Lluesma had knowledge of and participated in a conspiracy to export stolen vehicles. The government need not prove that a defendant had knowledge of all details of the phases of the conspiracy. They need only demonstrate that the defendant knew the essential nature of the conspiracy. *United States v. Alvarez,* 755 F.2d 830, 853 (11th Cir.), *cert. denied,* 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985). Likewise, the government need not prove participation in a criminal conspiracy through direct evidence, but rather may suggest the inference that a common purpose existed based upon circumstantial evidence. *United States v. Khoury,* 901 F.2d 948, 962 (11th Cir.1990).

█ Although not controlling, presence and association are material and probative factors that a jury may consider in reaching its verdict. *United States v. Williford,* 764 F.2d 1493, 1500 (11th Cir.1985). A jury may infer knowledgeable voluntary participation from presence, when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present. *United States v. Cruz–Valdez,* 773 F.2d 1541, 1546 (11th Cir.1985) (en banc), *cert. denied,* 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986).

Capote, a mid-level assistant in this conspiracy, testified that everyone involved in the enterprise knew that the stolen equipment would be exported to Venezuela. Capote testified that he talked to Lluesma about a high level coconspirator who made money from exporting goods to Venezuela; Lluesma also knew that the high level conspirator was in a hurry to ship a container on one occasion because of fear that the enterprise would have to wait a week in order to ship it. Capote also testified that he spoke of the exportation in Lluesma's presence. Circumstantial evidence also supported the jury's determination that Lluesma knew the stolen items were destined for export because the warehouse was in a commercial neighborhood with other import/export businesses.

From this evidence, a reasonable juror could conclude that Lluesma understood that the shipping containers with the stolen equipment were being exported to Venezuela. Thus, we reject Lluesma's challenge to the sufficiency of the evidence supporting his conviction.

B. *Evidence to support Cruz's prosecution*

█ Cruz contends that the evidence was insufficient to support his conviction because he neither knew of nor participated in the conspiracy to export stolen equipment.

The evidence presented at trial showed that a coconspirator introduced Cruz to Capote. Capote offered Cruz odd jobs including working in his warehouse and removing the roof from a John Deere tractor to load it into a container. Cruz also helped a truck driver place a container onto a trailer. No evidence showed that Capote discussed the criminal nature of the enterprise with Cruz. Neither does the evidence reveal that Capote discussed the exportation of the containers to Venezuela in Cruz's presence. At most, the evidence showed that Cruz, an unemployed person, performed odd jobs for Capote.

The government's most damaging evidence against Cruz is that he made untruthful statements to the officers at the time of his arrest, when he stated that the only thing he did was load a piece of construction equipment into a shipping container. Taken in context, however, this statement is not necessarily false. The evidence actually comports with Cruz's description of his activities on that particular day.

We find this evidence insufficient to support Cruz's conviction for conspiring to export stolen vehicles.

## CONCLUSION

For the foregoing reasons, we affirm the conviction of Lluesma and reverse the conviction of Cruz.

AFFIRMED in part and REVERSED in part.