[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10202
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 23, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-10015-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEVEN MELTON KIVETT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 23, 2008)

Before HULL, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Steven Melton Kivett appeals his convictions and 27-month sentence, imposed after a jury trial, for conspiracy to commit alien smuggling, a violation of 8 U.S.C. § 1324(a)(1)(A)(v)(i); six counts of alien smuggling, violations of 8

U.S.C. § 1324(a)(1)(A)(iv); unlawful entry into Cuban waters, a violation of 50 U.S.C. § 192, 33 C.F.R. §§ 107.215, 107.230; and making a false statement to Coast Guard officials, a violation of 18 U.S.C. § 1001(a)(2). On appeal, Kivett raises three claims: (1) that the district court erred by admitting into evidence, at trial, a document which was not produced during discovery; (2) that insufficient evidence supported his convictions for alien smuggling and conspiracy to commit alien smuggling; and (3) that his sentence was unreasonable because the district court did not take into account the 18 U.S.C. § 3553(a) factors, including his age and health.[1] After careful review, we affirm.

The relevant facts are straightforward. On June 22, 2006, Kivett was charged with one count of conspiracy to commit alien smuggling, 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count One); six counts of alien smuggling, 8 U.S.C. § 1324(a)(1)(A)(iv) (Counts Two through Seven); one count of unlawful entry into Cuban waters, 50 U.S.C. § 192, 33 C.F.R. §§ 107.215, 107.230 (Count Eight); and one count of making a false statement to a member of the Coast Guard, 18 U.S.C. § 1001(a)(2) (Count Nine). Count One alleged that Kivett had committed three overt acts in furtherance of the conspiracy: (1) by departing Florida in a vessel, (2)

<hr>

[1]Kivett received a sentence within the Guidelines range. Kivett never challenged the range, nor did he request a sentence outside of the range. To the extent Kivett suggests, for the first time on appeal, that he was entitled to a downward variance, that is, a sentence below the Guidelines range, we discern no plain error.

taking approximately six Indian nationals onboard near a Cuban beach, and (3) by traveling on the high seas with the Indian nationals onboard a vessel with Florida registration. The indictment also contained a criminal forfeiture count. Kivett pled not guilty and proceeded to trial.

The government presented the following evidence. Joshua Soto, a Boat Mate Second Class with the U.S. Coast Guard, testified that on June 6, 2006, he received a telex from the Cuban Border Guard indicating the presence of a suspected alien-smuggling vessel. Soto subsequently saw Kivett fishing on a vessel traveling north at a rate of between five and six knots. Soto observed six other individuals onboard the vessel, all of whom appeared to Soto to be nervous. Soto subsequently boarded the vessel and determined that Kivett was the master or chief operator. Soto asked Kivett the purpose of his voyage and Kivett responded that he had left Key West to go on a fishing trip and had picked up the six passengers from a sinking vessel. Soto attempted to speak with the passengers, but they did not speak English, and he instructed the boarding team to search for identification. The boarding team discovered passports that contained Cuban visa stamps. Kivett provided Soto with a Canadian citizenship card bearing the name "Steven Matthew Kelly."[2] The vessel, however, was on the U.S. registry and

---

[2]The parties subsequently stipulated that Kivett was not a Canadian citizen, provided false identification at the time of his arrest, and his real name was not "Steven Matthew Kelly."

3

Soto's team found no Coast Guard permit allowing travel to Cuba onboard the vessel. During the search, over 100 gallons of fuel were discovered, which Soto opined was an excessive amount. Moreover, despite how far offshore the vessel was located, only light fishing tackle was found. Excessive amounts of food and water for one person were also found, as were charts of Cuban waters and a cruising guide for the area. Sections in the guide were highlighted, including an area Soto said was popular with alien smugglers.

During Soto's testimony, the government moved to admit Exhibit Eight as a self-authenticating document. The exhibit was a "certificate of non-existence of a permit," presumably to enter Cuban waters, relating to Kivett, issued by the Commander of the Seventh Coast Guard District. Kivett's counsel objected to the admissibility, arguing that he had not seen the document before earlier that day and that it was not provided during discovery. The government responded that the exhibit had been obtained only a few days before trial. The district court held a sidebar conference, which was not transcribed, after which Exhibit Eight was not admitted. The government continued its examination of Soto, asking him whether he knew if Kivett had permission to enter Cuban territorial seas. Soto responded in the negative, stating that, to his knowledge, the vessel did not have the required permit.

Petty Officer Victor J. Rosario was a member of the Coast Guard boarding team that boarded and searched Kivett's vessel. Rosario noticed that Kivett reeled in a school of fish just prior to the boarding and appeared nervous. According to Petty Officer Rosario, Kivett claimed that he was a Canadian, rather than American, citizen. Kivett also stated that he had been fishing early in the morning, when he found the six passengers onboard a sinking a boat. Kivett claimed to have rescued them and put their belongings in bags on his vessel. Petty Officer Rosario found this explanation to be suspicious because six hours had passed since the alleged rescue and the Coast Guard had not been informed by Kivett. Kivett claimed that his radio was not operational, but Rosario conducted a radio check with the Coast Guard boat and determined that the radio was working. Moreover, Petty Officer Rosario observed the six passengers and noticed that they were completely dry, as were their belongings, and that their belongings included backpacks full of clothes and documents from India, including passports and high school diplomas. Rosario also determined that the vessel was not carrying an adequate quantity of bait.

The government also presented the testimony of some of the Indian passengers, who all stated that they were Indian citizens. Hareshkumar Kandas Patel further testified that his paternal uncle knew someone named "Alley" who

5

had helped the passengers get visas to Cuba and plane tickets. Upon arrival in Cuba, an Indian spokesperson spoke with Alley, booked the passengers into a hotel, and subsequently took them to two different houses. Ultimately, a different person took them to a beach, where Kivett picked them up in his boat. H.K. Patel testified that he did not speak English and never spoke with Kivett or paid him any money. Another of the passengers testified and provided a similar version of events.

Jeffrey Concet, a cooperating witness appearing pursuant to a plea agreement, testified that Kivett had admitted going to Cuba to pick up six Indians, being paid $10,200 per person, and having received $20,000 by the time of the incident. Concet testified that Kivett indicated a Pakistani named Mohammed was the middleman and that the Indian nationals' family lived in New York and was paying for the transport. According to Concet, Kivett had been smuggling since 1984, when he took college kids from Miami to the Bahamas and then returned to Miami with illegal aliens. Kivett told Concet that the Indians were not dressed properly when he picked them up and that they were supposed to be dressed as tourists. Kivett also told Concet that he wanted Mohammed and the Indian nationals' families to contact the Indian nationals and tell them to testify that he had rescued them from a sinking ship, rather than that he picked them up on a

6

Cuban beach. Kivett also said that he had thrown several empty containers of fuel off the boat.

Steven Bausmith, a customs and border protection officer, interviewed Kivett after his detention by the Coast Guard. Kivett stated that he was an American citizen and explained that he had used false identification because of an outstanding warrant. Kivett also indicated that he co-owned the boat on which he had been detained. His told Bausmith that his co-owner was named Mohammed.

After Bausmith's testimony, the government again moved to admit Exhibit Eight, but Kivett's counsel objected based on Fed. R. Crim. P. 16, arguing that the document was not timely provided during discovery. The district court overruled the objection and admitted the exhibit, finding no prejudice resulting from the late discovery.

At the close of the government's case-in-chief, Kivett moved for a judgment of acquittal, pursuant to Fed. R. Crim. P. 29, on the basis of insufficient evidence, which the court denied. After introducing several exhibits, the defense rested and renewed its motion for a judgment of acquittal, which was also denied. The jury subsequently convicted Kivett on all nine counts and he proceeded to sentencing.

The presentence investigation report ("PSI") recommended a base offense level of 12, pursuant to U.S.S.G. § 2L1.1(a)(3), and a 3-level upward adjustment,

pursuant to § 2L1.1(b)(2)(A), because the offense involved the smuggling, transporting or harboring of six illegal aliens. With an adjusted offense level of 15, and a criminal history category of II, the advisory Guidelines imprisonment range was 21 to 27 months. Also under the Guidelines, Kivett faced a supervised-release term of two to three years, § 5D1.2(a)(2), and a fine range of between $4,000 and $40,000, § 5E1.2(c)(3). Kivett did not object to the PSI's facts or calculations.

At the sentencing hearing, no new objections were raised and the district court implicitly adopted the PSI. After Kivett stated that he would not continue engaging in criminal activities, his counsel noted that Kivett had cooperated at the time of the incident. Counsel also highlighted that Kivett was 57 years old and "not in the best of health." Kivett's counsel requested a low-end Guidelines sentence of 21 months' imprisonment. The district court stated that it had considered the statements of all parties, "the Presentence Report which contains the advisory guidelines," and the statutory factors. The court then sentenced Kivett to 27 months' imprisonment on all nine counts, to be served concurrently, followed by three years of supervised release on each count, also to run concurrently, and ordered Kivett to pay a $1,000 fine and a $900 special assessment. Kivett raised no objections to the findings of fact or to the manner in which sentence was pronounced. This appeal followed.

First, Kivett challenges the district court's admission of Exhibit Eight. Again, the exhibit consisted of a certificate of non-existence of a permit from the Commander, Seventh Coast Guard District. It is undisputed that the government did not receive the document until a few days before the trial and did not provide it to the defense during discovery. We review evidentiary rulings for abuse of discretion. United States v. Henderson, 409 F.3d 1293, 1297 (11th Cir. 2005).

Under Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, the government must disclose, upon a defendant's request, documents that are "within the government's possession, custody, or control" if requested documents are material to preparing the defense or the government intends to use the documents during its case-in-chief. Rule 16 further provides that one of the remedies for a violation of the rule is the exclusion of the subject undisclosed evidence. Fed. R. Crim. P. 16(d)(2)(C). It is well-settled, however, there is no Rule 16 violation occurs where the requested materials are not in the government's possession, custody, or control. See United States v. Brazel, 102 F.3d 1120, 1150 (11th Cir. 1997); United States v. Cannington, 729 F.2d 702, 712 (11th Cir. 1984). Because Exhibit Eight was not "within the possession, custody, or control" of the

9

government prior to a few days before the trial, the district court did not abuse its discretion by admitting the exhibit and denying relief under Rule 16(d)(2)(C).[3]

Kivett also challenges the sufficiency of the evidence to support his convictions for alien smuggling and engaging in a conspiracy to do so (Counts One through Seven). We review challenges to the sufficiency of the evidence de novo, resolving all reasonable inferences from the evidence in favor of the jury's verdict. See United States v. Rudisill, 187 F.3d 1260, 1267 (11th Cir. 1999). The evidence is sufficient where a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt. United States v. Lluesma, 45 F.3d 408, 409-10 (11th Cir. 1995). "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." United States v. Faust, 456 F.3d 1342, 1345 (11th Cir.), cert. denied, 127 S.Ct. 615 (2006).

---

[3]Even if we found an abuse of discretion in the district court's ruling, any error in admitting the contested document unquestionably was harmless. Cf. United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005) (reviewing preserved evidentiary objection for harmless error). An error is harmless if it "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." United States v. Dickerson, 248 F.3d 1036, 1048 (11th Cir. 2001). Here, evidence independent of the alleged evidentiary error showed that Kivett's vessel did not have the required permit to enter Cuban waters.

To establish a criminal violation of § 1324(a), the Government must prove beyond a reasonable doubt that the defendant "(1) encouraged or induced the alien to enter or reside in the United States, (2) knowing or in reckless disregard that the alien's coming to, entry, or residence in the United States was in violation of the law." United States v. Ndiaye, 434 F,3d 1270, 1297 (11th Cir.), cert. denied, 127 S. Ct. 128 (2006). In the instant case, the government presented abundant evidence to support Kivett's alien-smuggling convictions. With respect to the six counts of encouraging or inducing aliens to come to the United States, Kivett claimed to have picked up the aliens from a sinking vessel, but the six aliens onboard the vessel and their belongings were dry. The vessel also contained excessive food and fuel for the fishing trip described by Kivett, in addition to charts of Cuban waters. Two of the Indian nationals testified that he had picked up all six passengers from a Cuban beach. Moreover, Concet testified that Kivett was paid a substantial sum and wanted the aliens to change their testimony and declare that they had been rescued, despite Kivett's statements to the contrary, which he made to authorities after his detention. In short, the evidence was sufficient to support the jury's guilty verdicts

As for the sufficiency of the evidence to support Kivett's conviction on the conspiracy count, "[t]he essential elements of criminal conspiracy are an agreement

11

between two or more persons to commit a crime and an overt act in furtherance of the agreement by one of the conspirators." United States v. Avila-Dominguez, 610 F.2d 1266, 1271 (5th Cir. 1980) (conspiracy to encourage or induce the entry of illegal aliens into the United States and to transport those aliens within the United States). "Once the existence of the conspiracy is established, there must be substantial evidence that each alleged conspirator knew of, intended to join and participated in the conspiracy." Id.

"The existence of an agreement may be proven by circumstantial evidence, including inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." United States v. Silvestri, 409 F.3d 1311, 1328 (11th Cir. 2005) (quotation marks omitted). In fact, an entire "[c]onspiracy may be proven by circumstantial evidence and the extent of participation in the conspiracy or extent of knowledge of details in the conspiracy does not matter if the proof shows the defendant knew the essential objective of the conspiracy." United States v. Gupta, 463 F.3d 1182, 1194 (11th Cir. 2006) (quotation marks omitted). Furthermore, the government is not required to "prove that each conspirator agreed with every other conspirator, knew of his fellow conspirators, was aware of all of the details of the conspiracy, or contemplated participating in the same crime." United States v. Browne, 505 F.3d 1229, 1274 (11th Cir. 2007).

Kivett's conspiracy conviction also is amply supported by the evidence. The government established the existence of a criminal agreement, circumstantially, by presenting testimony about (1) the involvement of Alley, a paternal uncle of one of the passengers, and multiple agents in Cuba; (2) the amount of money received by Kivett for picking up the Indian nationals; and (3) Kivett's failed attempts, following his arrest, to have the aliens change their testimony to say that they were rescued from a sinking boat rather than picked up on a Cuban beach. Moreover, the evidence plainly supported a finding that Kivett committed at least one of the three overt acts alleged in the indictment, including that he piloted a vessel with six Indian nationals onboard after picking them up on a Cuban beach. On this record, the jury readily could have found Kivett guilty under a reasonable construction of the evidence.

Finally, Kivett argues his sentence was unreasonable. We review a defendant's ultimate sentence for reasonableness. United States v. Booker, 543 U.S. 220, 264 (2005); United States v. Talley, 431 F.3d 784, 785 (11th Cir. 2005). Under the post-Booker, advisory Guidelines regime, district courts enjoy significant latitude in imposing criminal sentences. Rita v. United States, 127 S. Ct. 2456, 2465 (2007); see also Gall v. United States, 128 S. Ct. 586, 594 (2007). The reasonableness standard of appellate review is akin to abuse of discretion. See

Gall, 128 S. Ct at 594 ("Our explanation of 'reasonableness' review in the Booker opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."); Kimbrough v. United States, 128 S. Ct. 558, 576 (2007) (stating that appellate courts should give "due respect to [a] District Court's reasoned appraisal" of the proper sentence for a defendant). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in light of both [the] record and the factors in section 3553(a)." Talley, 431 F.3d at 788.

Under § 3553(a), a sentencing court is charged with imposing a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, afford deterrence, protect the public from further crimes of the defendant, and provide the defendant with educational or vocational training, medical care or other treatment. The factors a court should consider include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, deter criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the sentencing guidelines; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records

who have been found guilty of similar conduct. 18 U.S.C. § 3553(a). The district court need not recite a laundry list of the § 3553(a) factors; rather, some indication in the record that the court adequately and properly considered the applicable advisory Guidelines range and the § 3533(a) sentencing factors is sufficient. United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).

Here, the district court correctly calculated the Guidelines range and stated that it had considered: the statements of the parties, which included Kivett's arguments about his age and health; the statutory factors; and the PSI and the advisory guidelines included in the PSI. The district court did not recite a laundry list of the § 3553(a) factors, but it was not required to do so. See Scott, 426 F.3d at 1329. The court then sentenced Kivett to 27 months' imprisonment, which was within the applicable Guidelines range, to which Kivett had not objected. On this record, Kivett has not satisfied his burden to show his sentence was unreasonable.

**AFFIRMED.**