[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13384
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 11, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00082-CR-T-26MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL PREWETT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 11, 2009)

Before DUBINA, Chief Judge, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Daniel Prewett appeals his convictions and 216-month sentences imposed

after a jury convicted him for (1) conspiracy to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, 21 U.S.C. §§ 841(b)(1)(A)(ii)(II) and 846; (2) aiding and abetting the possession with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II) and 18 U.S.C. § 2 (Count 2); and (3) two counts of intent to conceal the nature, source, and ownership of monetary proceeds that had been represented by a law enforcement officer to be from the distribution of cocaine by attempting to conduct a financial transaction affecting interstate commerce, 18 U.S.C. §§ 1956(a)(3)(B) and 2.

On appeal, Prewett first argues that the wiring of funds on Luciano Angrilli's behalf for the purchase of cocaine is insufficient to find him guilty of conspiracy to possess with intent to distribute cocaine. Prewett contends that this Court's precedent does not support a conspiracy conviction for solely wiring money. Prewett argues that during the cocaine transaction, he only acted with "Felipe," who was the government's confidential informant and did not act with Angrilli. Further, his involvement in wiring the funds was initiated by the government. Prewett contends that because he only conspired with Felipe, a government agent, a conspiracy did not take place.

2

We review de novo the sufficiency of the evidence supporting a criminal conviction, viewing the evidence in the light most favorable to the government. United States v. Benbow, 539 F.3d 1327, 1331 (11th Cir. 2008).  The evidence is sufficient so long as a reasonable trier of fact could find guilt beyond a reasonable doubt.  United States v. Lluesma, 45 F.3d 408, 409-10 (11th Cir. 1995). Furthermore, all reasonable inferences from the evidence are drawn in favor of the verdict.  United States v. Robertson, 493 F.3d 1322, 1329 (11th Cir. 2007), cert. denied, 128 S.Ct. 1295 (2008).  Additionally, "[e]vidence of flight is admissible to demonstrate consciousness of guilt and thereby guilt."  United States v. Blakey, 960 F.2d 996, 1000 (11th Cir. 1992).

Prewett was charged with violating 21 U.S.C. § 846, which provides:

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846.  Specifically, Prewett was charged with conspiring to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(b)(1)(A)(ii).

To sustain a conviction for conspiracy to possess cocaine with intent to distribute, the government must prove beyond a reasonable doubt that: "(1) a conspiracy (or agreement) existed between Defendants or between Defendants and

3

others; (2) Defendants knew the essential objects of the conspiracy, which are to do either an unlawful act or a lawful act by unlawful means; and (3) Defendants knowingly and voluntarily participated in the conspiracy." United States v. Westry, 524 F.3d 1198, 1212 (11th Cir. 2008). "If there are only two members of a conspiracy, neither may be a government agent or informant . . ." United States v. Arbane, 446 F.3d 1223, 1228 (11th Cir. 2006). A conspiracy is often shown by circumstantial evidence and "may be inferred from a 'concert of action.'" Westry, 524 F.3d at 1212 (citation omitted). "A defendant's knowing participation in a conspiracy may be established through proof of surrounding circumstances such as acts committed by the defendant which furthered the purpose of the conspiracy." United States v. Bain, 736 F.2d 1480, 1485 (11th Cir. 1984).

A jury could reasonably infer that there was an agreement between Prewett and Angrilli to possess and distribute cocaine. The government sufficiently proved the elements to convict Prewett of conspiring with Angrilli to posses cocaine with intent to distribute. First, while Prewett argues that he cannot be convicted for conspiracy when his only involvement was wiring of money, the record shows that Prewett did more than that. Specifically, Prewett (1) vouched for Angrilli's ability to pay for and distribute the cocaine; (2) knew that the cocaine deal between Angrilli and Felipe would not be completed until the $80,000 had been transferred;

4

(3) admitted to wiring the $80,000; and (4) knew the $80,000 was being used to pay for 5 kilograms of cocaine. Based on this evidence, a jury could reasonably infer that there was an agreement between Prewett and Angrilli to possess and distribute cocaine. For these same reasons, the record does not support Prewett's contention that he only conspired with Felipe. As shown above, Prewett both vouched for Angrilli's ability to purchase and distribute the cocaine and transferred $80,000 in order for Angrilli to obtain the cocaine. Further, the record does not support Prewett's contention that he only conspired with Felipe.

Prewett next argues that the government failed to establish that he knew that the funds he was wiring on behalf of Felipe were specifically the proceeds of cocaine distribution. Prewett concedes that he (1) twice wired $90,000; (2) took a $10,000 cut for each wiring; and (3) knew that Felipe was a drug trafficker and that the funds he was wiring were drug proceeds. However, he maintains that there was no evidence that he knew the funds were proceeds of cocaine distribution.

In order to convict a defendant of money laundering under 18 U.S.C. § 1956(a)(3)(B), the laundered property must be "represented to be the proceeds of specified unlawful activity . . . by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of [§ 1956(a)(3) ]." 18 U.S.C. § 1956(a)(3). "[I]n order to

5

satisfy the representation element of § 1956(a)(3), the Government need only prove that a law enforcement officer or other authorized person made the defendant aware of circumstances from which a reasonable person would infer that the property was drug proceeds." United States v. Starke, 62 F.3d 1374, 1382 (11th Cir. 1995). The government agents are not required to make express statements that the money came from illegal activity. Id.

The evidence in the record sufficiently supports an inference that Felipe, a confidential informant for the government, represented the source of the laundered money to be from cocaine. Although Felipe did not explicitly tell Prewett that the two $100,000 money laundering transactions involved cocaine proceeds, his statement to Prewett during the first money laundering transaction that he was from Colombia and that he was attempting to finalize a cocaine transaction with Angrilli could convey to a reasonable person that the money he wanted to launder was from cocaine proceeds. In addition, during the second money laundering meeting, Felipe once again informed Prewett of his pending drug deal with Angrilli. Felipe was not required to make an express statement to Prewett that the $200,000 was from cocaine proceeds. Therefore, there was sufficient evidence for a reasonable jury to conclude that Felipe represented to Prewett that the money Prewett was to launder was proceeds from cocaine.

6

Prewett next argues that the government failed to connect him with Angrilli's intent to distribute cocaine. Because the evidence was not sufficient to demonstrate that he laundered the proceeds of cocaine, he asserts, the money laundering cannot be a basis for the charge of aiding and abetting possession with intent to distribute cocaine. Specifically, while there may have been evidence to support Prewett's possession of cocaine insofar as he wired funds for the purchase, there was no evidence that he was connected with Angrilli's distribution of the cocaine, which is required for an aiding and abetting conviction.

Any individual who aids, abets, or counsels another during the commission of a crime is punished as if that person were a principle to the crime. 18 U.S.C. § 2. To prove aiding and abetting possession with intent to distribute, the government must show that (1) someone else committed the substantive offense, (2) the defendant "committed an act which contributed to and furthered the offense," and (3) the defendant intended to aid in the commission of the offense. United States v. Camacho, 233 F.3d 1308, 1317 (11th Cir. 2000).

Substantial evidence supports Prewett's conviction for aiding and abetting Angrilli's possession with intent to distribute cocaine. First, the evidence established that when Prewett wired Felipe $80,000, he knew that the money was necessary for Angrilli to commit the substantive offense of obtaining the cocaine.

7

Therefore, he committed an act which furthered the cocaine offense. Second, Prewett vouched to Felipe for Angrilli's ability to pay for and distribute the cocaine. Specifically, Prewett stated "he can move what he says he can move." This shows that Prewett intended to aid in the commission of the offense. A reasonable trier of fact thus could find Prewett guilty beyond a reasonable doubt of aiding and abetting Angrilli's distribution of cocaine.

Finally, Prewett argues that he was entitled to a role reduction at sentencing for his minimal or minor role in the offenses. Prewett contends that the district court's finding that he was a "financier" of Angrilli's cocaine purchase was not consistent with the evidence presented by the government, which established that he only wired the money, not that he provided any portion of it. Prewett argues that because the district court's sole finding for denying his role reduction was that he was a "financier," this case should be remanded for resentencing.

We review a district court's determination of a defendant's role in the offense for clear error. United States v. Rodriquez De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). Further explaining this standard, we have stated:

> a trial court's choice between two permissible views of the evidence is the very essence of the clear error standard of review. . . . So long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law, we believe that it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous.

8

Id. at 945 (citation and quotation omitted) (emphasis in original). "The proponent of the downward adjustment . . . always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." Id. at 939.

Under the Guidelines, a defendant may receive a two- to four-level reduction where his role in the offense can be described as minor, minimal, or somewhere in between. U.S.S.G. § 3B1.2. A minor participant is entitled to a two-level reduction and is someone who is "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2(b), comment. (n.5). A minimal participant is entitled to a four-level reduction and is someone who is "plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G § 3B1.2(a), comment. (n.4). Defendants who are more than a minimal participant but less than a minor participant qualify for a three-level reduction. U.S.S.G. § 3B1.2.

In determining whether a mitigating-role reduction is warranted, the district court should consider the following two principles: "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant

conduct." De Varon, 175 F.3d at 940. As to the first prong of the De Varon analysis, we have explained that, "[o]nly if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable - not a minor role in any larger criminal conspiracy - should the district court grant a downward adjustment for minor role in the offense." Id. at 944.

With regard to the second prong of the De Varon analysis, a district court should look to other participants only to the extent that they (1) "are identifiable or discernable from the evidence," and (2) "were involved in the relevant conduct attributed to the defendant." Id. at 944. "The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor participants." Id. However, the first prong set forth in De Varon may, in many cases, be dispositive. Id. at 945.

The district court did not clearly err in denying a mitigating role adjustment because the record supported a finding that Prewett did not play a lesser role in relation to the relevant conduct attributed to him and in comparison to other participants. As an initial matter, Prewett argues that the district court erred in denying his role reduction based on the sole finding that he was the financier.

Prewett is correct that the record does not demonstrate that he was the financier. However, Prewett objected at sentencing to this finding and the district court found that Prewett was an integral part of the whole scheme. Therefore, the district court's denial of his role reduction was not based solely on the finding that he was the financier.

The record supports the district court's conclusion that Prewett was an integral part of the whole scheme and therefore he was not entitled to a mitigating role reduction. Under the first De Varon prong, Prewett played a substantial role in the relevant conduct for which he was sentenced. In particular, (1) Prewett vouched for Angrilli's ability to pay for and distribute the cocaine; (2) Prewett offered to help Felipe reinstate Bahia in order to have the cocaine transaction proceed; (3) Felipe would not supply Angrilli the cocaine without Prewett first wiring the money; and (4) Prewett acknowledged that he knew the wired money was being used to pay for drugs.

Additionally, the district court's decision not to apply the mitigating role reduction is also supported under the second De Varon prong. Prewett fails to provide any evidence showing that his responsibilities of wiring the cocaine purchase money were less vital to the conspiracy than those of Angrilli's when Felipe would not supply Angrilli the cocaine without Prewett first wiring the

11

money.  Prewett appears to be more of an average participant than a minor player. Even if Prewett was less culpable for the possession and distribution of the cocaine, given the evidence of his involvement, the district court did not clearly err in denying him a mitigating role reduction because it is possible that none of the participants in the offenses were minor participants.  Accordingly, the district court did not clearly err in declining to grant a mitigating role reduction.  Therefore, we affirm the convictions and sentences.

**AFFIRMED.**