[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13332
Non-Argument Calendar

_____

D.C. Docket No. 8:17-cr-00367-SDM-JSS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATALIE RENE PANKO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 22, 2019)

Before BRANCH, TJOFLAT, and ANDERSON, Circuit Judges.

PER CURIAM:

Natalie Panko appeals her convictions and sentences for offenses involving

debit card fraud.  She challenges (1) the sufficiency of the evidence with respect to

the conspiracy, (2) the admission of testimony about an uncharged extrinsic act, and (3) a sentencing enhancement for obstruction of justice.  For the reasons that follow, we affirm Panko's convictions and sentence.

## I.    BACKGROUND

Panko owned a restaurant called Ladies of the Sea, which had a merchant account with Square, Inc. for processing customers' debit and credit card payments.  For several months in 2012, Panko used that Square account to receive funds from debit cards brought to her by co-conspirator Rico Simmons.  Those funds were refunds paid by the government based on fraudulent income tax returns that had been filed under stolen identities.  Panko and her restaurant colleague Mazie Hill would swipe the refund cards and the transactions would look like restaurant-related purchases, though they were not.  According to the government, they successfully swiped the fraudulently obtained cards to the tune of $131,782.12.  They also attempted to make another $64,141.37 in swipes for which the cards were declined, for a total intended loss of $195,932.49.

Panko and Simmons were indicted on a charge of conspiracy, 18 U.S.C. § 371,[1] to commit: theft of government property, 18 U.S.C. § 641,[2] access-device

---

[1] "If two or more persons conspire either to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."  18 U.S.C. § 371.

[2] "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another . . . any record, voucher, money, or thing of value of the United States or of any department or

fraud, 18 U.S.C. § 1029(a)(2),[3] and aggravated identity theft, 18 U.S.C. § 1028A;[4] and on several substantive charges of each of those three offenses. Simmons pleaded guilty to two counts in exchange for dismissal of the remaining counts. Panko initially pleaded guilty to each of the counts without a plea agreement.

At sentencing, Panko objected to the loss amount and the number of victims, arguing that she should be held responsible only for the cards she actually swiped and that she did not know that the debit cards belonged to anyone other than Simmons or were the proceeds of tax fraud. Panko then moved to withdraw her guilty plea, and the court allowed her to do so.

The case proceeded to a jury trial. Besides the records documenting the transactions at issue, key evidence against Panko came from the testimony of her associates. Mazie Hill, who separately pleaded guilty to conspiracy to commit theft of government property, testified that she began using her own Square account to process fraudulent transactions after Panko suggested that she speak to Simmons

---

agency thereof . . . [s]hall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C. § 641.

[3] "Whoever . . . knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period . . . shall, if the offense affects interstate or foreign commerce, be . . . fine[d] under this title or imprison[ed] for not more than 10 years, or both." 18 U.S.C. § 1029(a)(2), (c)(1)(A)(i).

[4] "Whoever, during and in relation to any felony violation [of 18 U.S.C. § 641], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1).

3

about her financial difficulties.  Simmons suggested that she allow him to use her Square account to swipe debit cards, which he would get from tax returns his friend had filed, and then split the proceeds with him.  She knew this conduct was illegal, but she did it because she needed the money.  She never used Panko's Square account, though.  Panko helped Hill generate fake invoices to send to Square to substantiate the charges, and Panko and Hill agreed to tell the IRS that the charges were for legitimate catering orders.

Damon Chalk, who had been convicted of falsifying tax returns elsewhere, also testified, over Panko's objection, that when he had worked at Ladies of the Sea, he and Panko would buy fraudulently obtained U.S. Treasury checks, sell or cash them, and split the proceeds 50/50.  He also twice saw Panko swipe Turbo Tax debit cards that Simmons brought her.  Chalk testified that Panko knew the debit cards were the proceeds of tax fraud because she expressed worry about dealing with them and getting caught.  Chalk advised Panko to create invoices to make the transactions look like legitimate sales.  Chalk also testified that Simmons personally told him that he was involved with tax fraud in 2012.

Among the financial records in evidence was a handwritten ledger from Ladies of the Sea that Panko had produced in response to a grand jury subpoena.  That ledger showed signs of having been falsified in response to the subpoena rather than being a contemporaneous business record, and Hill, who was

4

responsible for maintaining the restaurant ledger, testified that she did not recognize the pages. The income recorded in the ledger also differed from the income reported on Panko's tax return for 2012. Overall, the patterns of large-transaction card swipes followed by cash withdrawals were the same for both Panko's and Hill's Square accounts. There was also evidence that a Square account in the name of Panko's husband was opened while he was in prison, using Panko's cell phone number and email address, and was used to receive funds from card swipes.

At the close of the government's evidence, Panko moved for a judgment of acquittal, Fed. R. Crim P. 29(a), which the court denied. The jury convicted Panko of conspiracy to commit all three charged offenses; it also convicted her of the substantive charges of theft of government money and access device fraud but acquitted her of aggravated identity theft.

The presentence investigation report, based on a loss of more than $150,000 and more than 10 victims, calculated a total offense level of 20 and a criminal history category of I, for a Guideline range of 33 to 41 months' imprisonment. The government sought a two-level enhancement for obstruction of justice, U.S.S.G. § 3C1.1, based on the fabricated ledger. The court agreed that Panko had obstructed justice by producing a "false and misleading and unilaterally

5

exculpatory version of the ledger." With a total offense level of 22, the Guideline range was then 41 to 51 months.

Over Panko's objection, the court found it appropriate for sentencing purposes to use the total of the actual and intended loss attributable to both Panko and Hill. The court denied a reduction for minor role in the offense, U.S.S.G. § 3B1.2(b). Panko then spoke on her own behalf and said she always wanted to help everybody, including Hill. She admitted that "[her] business [was] involved in this," but asserted that "what you see is not what it is. Truly it's not." The district court imposed a sentence of 51 months. Panko now appeals her convictions and sentence.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

Panko first argues that the evidence was insufficient to allow a reasonable jury to convict her of any conspiracy under 18 U.S.C. § 371. We review *de novo* whether a conviction is supported by sufficient evidence, viewing the evidence and making all reasonable factual inferences and credibility determinations in favor of the verdict. *United States v. Maitre*, 898 F.3d 1151, 1157 (11th Cir. 2018). Evidence is sufficient if a reasonable factfinder could have found that it established guilt beyond a reasonable doubt. *United States v. Beckles*, 565 F.3d 832, 840 (11th Cir. 2009). We will affirm if the evidence is sufficient to support a conspiracy

conviction on any one of the three objects charged here.  *See United States v. Ross*, 131 F.3d 970, 984 (11th Cir. 1997).

The evidence adduced at trial allowed a reasonable jury to conclude that Panko knew about and agreed to participate in a scheme with Simmons to commit, at the least, theft of government money.  The government was not required to prove that she knew all the details of the conspiracy; rather, it needed to show only that she knew the "essential nature" of the conspiracy.  *United States v. Lluesma*, 45 F.3d 408, 410 (11th Cir. 1995).  Nor was the government required to produce direct evidence of agreement or participation.  *Id.*  "The existence of an agreement may be shown by circumstances indicating that criminal defendants acted in concert to achieve a common goal."  *Hamling v. United States*, 418 U.S. 87, 124 (1974).

The testimony of Mazie Hill, which we must assume the jury credited, allowed the jury to infer the existence of the conspiracy.  Hill testified that Panko suggested she speak to Simmons about her financial difficulties and that Simmons then suggested the debit card scheme.  Hill knew the debit cards contained funds Simmons obtained from fraudulent tax returns.  The jury could reasonably infer that Panko suggested that Hill speak to Simmons because Panko had knowledge based on her own involvement with Simmons.  Moreover, Hill also testified that Panko helped her generate fake invoices to send to Square, and she and Panko

7

agreed together to tell the IRS that all of the debit-card swipes were for legitimate catering orders. Panko's attempt to cover up her conduct in the same manner as Hill was further evidence that Panko's agreement with Simmons was similar to Hill's.

In addition, financial records in evidence established that Panko and Hill sometimes swiped the same fraudulent debit card into their own respective Square accounts. Even when different cards were involved, though, both Panko's and Hill's Square accounts reflected a similar pattern of attempting to charge decreasing amounts until the charges were accepted and then continuing to swipe until the card balance was depleted. Since Hill testified that she was instructed in this practice by Simmons and that Simmons supplied the cards, the jury could conclude that Panko had a similar agreement with Simmons to conduct such transactions: that Panko acted in concert with Simmons to achieve the common goal of stealing government funds. *See Hamling*, 418 U.S. at 124.

Moreover, Panko concedes that Damon Chalk provided "direct testimony of her knowledge and intent to commit the charged fraud." Panko nonetheless asserts that Chalk's testimony was impeached when Hill testified that she did not personally know Chalk, contradicting Chalk's testimony that Hill had shown him some things about committing tax return fraud. But the government did not charge Panko with filing false tax returns, and the jury was not required to decide that

8

issue in order to convict Panko of the conspiracy.  Chalk's testimony that implicated Panko in the debit-card conspiracy was based solely on his conversations with Panko, and that testimony went unchallenged.  Chalk testified that he knew Hill was also swiping debit cards for Simmons, because Panko told him so, and that he advised Panko not to let Hill swipe with Panko's account.  "The jury obviously found [Chalk] to be credible, and credibility determinations are for a jury to make." *United States v. Ndiaye*, 434 F.3d 1270, 1296 (11th Cir. 2006).  Accordingly, we affirm as to this issue.

## B.    Evidence of Extrinsic Offenses

Next, Panko argues that the district court erred when it allowed Damon Chalk to testify about Panko's buying and selling U.S. Treasury checks.  We review this evidentiary ruling for an abuse of discretion. *United States v. Calderon*, 127 F.3d 1314, 1331 (11th Cir. 1997).

Panko contends that Chalk's testimony about the Treasury checks was unduly prejudicial and unnecessary.  But the district court did not abuse its discretion when it allowed this testimony, which meets all three requirements for admissibility under Rule 404(b) of the Federal Rules of Evidence.  Rule 404(b)(1) prohibits the introduction of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  However, extrinsic evidence may be

9

admissible (1) if it is relevant to another issue, such as motive, intent, or knowledge; (2) if it supports a finding that the defendant actually committed the extrinsic act; and (3) if its probative value is not substantially outweighed by unfair prejudice. *Calderon*, 127 F.3d at 1330–31; *see* Fed. R. Evid. 404(b)(2).

First, as Panko concedes, the testimony was relevant to an issue other than character; Panko's theory of defense made her intent a central issue in this case. *Calderon*, 127 F.3d at 1331. Second, Chalk's testimony itself sufficed to show that Panko actually committed the extrinsic acts. *United States v. Bowe*, 221 F.3d 1183, 1192 (11th Cir. 2000) ("the uncorroborated word of an accomplice . . . provides a sufficient basis for concluding that the defendant committed extrinsic acts"). Third, the district court was within its discretion to conclude that the probative value of this evidence was not substantially outweighed by unfair prejudice. Panko argues that the extrinsic acts were dissimilar to the charges here, but we disagree. In terms of their "distinctive means and ultimate purpose," both the Treasury check scheme and the scheme here had in common the theft of government funds, in the name of other individuals, deposited via legitimate companies. *See United States v. Lamons*, 532 F.3d 1251, 1267 & n.27 (11th Cir. 2008). In addition, the "special difficulty of proving intent in conspiracy cases" rendered this testimony helpful to bolstering the proof of Panko's intent to enter into an agreement to steal government funds. *See Calderon*, 127 F.3d at 1332.

10

Furthermore, any undue prejudice from Chalk's testimony was mitigated by the district court's limiting instruction.  At Panko's request, the court instructed the jury that the Treasury checks were not the subject of the present charges and that the evidence about them should be considered only as evidence of Panko's knowledge and intent regarding fraudulent activity generally.  *See id.* at 1333 (concluding that any unfair prejudice was mitigated by a limiting instruction that the jury could consider the evidence only to prove the defendant's state of mind).  Accordingly, we affirm as to this issue.

### C.    Enhancement for Obstruction of Justice

Finally, Panko argues that the sentencing enhancement for obstruction of justice, U.S.S.G. § 3C1.1, was erroneous.  We review the district court's findings of fact for clear error and its application of those facts to the Guidelines *de novo*.  *United States v. Guevara*, 894 F.3d 1301, 1311 (11th Cir. 2018).

The enhancement here was based on the falsified Ladies of the Sea ledger that Panko produced in response to the grand jury's subpoena.  Panko argues that the evidence does not show that she created the false ledger or that the false ledger impeded the investigation, but we disagree.  The district court's factual finding that Panko had produced a "false and misleading and unilaterally exculpatory version of the ledger" was not clearly erroneous.  IRS Special Agent Cuong Ly testified that, in response to the subpoena, Panko mailed him a thumb drive containing an

electronic version of the ledger, which supports the finding that she produced the document.

To support the obstruction enhancement, the government also had to show that Panko "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. "[P]roducing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding" is an example of such conduct. *Id.* cmt. n.4(C). Although the district court did not explain precisely how the "misleading and unilaterally exculpatory" character of the false ledger impeded the grand jury's investigation, the record clearly supports a finding that it attempted to do so. *See Guevara*, 894 F.3d at 1311. The ledger reflects an intent to portray retroactively the large debit card transactions as legitimate restaurant income, in contrast with the much lower receipts that Panko contemporaneously reported to the IRS in 2012. Accordingly, we affirm as to this issue.

## IV.    CONCLUSION

Panko's convictions and sentence are

**AFFIRMED.**