[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13858
Non-Argument Calendar
_____

D.C. Docket No. 1:06-cr-00138-WSD-ECS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TRU YUSUFU WEUSI OLUSOLA,
a.k.a. James Edward Johnson,
a.k.a. Tru Olusola,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 29, 2014)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

Tru Olusola appeals the revocation of his supervised release and imposition of a 36-month sentence, pursuant to 18 U.S.C. § 3583.  After review, we affirm.

## I.  BACKGROUND

### A.    Conviction and Supervised Release

In 2007, Olusola pled guilty to two counts of bank fraud, in violation of 18 U.S.C. § 1344.  As part of his 2007 offense conduct, Olusola presented two altered checks totaling $465,173.39 for deposit into his business account at Bank of America, and then made four withdrawals totaling $200,000 from that bank account.  The two checks originally were made out to other entities, but were altered to reflect Olusola as the payee.

After serving a 57-month sentence, in April 2010, Olusola was released from prison and began his three-year term of supervised release.  As a condition of supervised release, Olusola was prohibited from committing another federal, state, or local crime.

### B.    Petition for Revocation

In March 2013, Olusola's probation officer filed a petition for revocation of supervised release.  The petition alleged that Olusola had: (1) violated the law by participating in a large check fraud scheme in Texas that was currently under investigation by the U.S. Secret Service; (2) violated a special condition regarding financial audits by failing to report his possession of a 2011 Porsche Panamera,

2

worth approximately $88,000; (3) left the judicial district without permission and traveled to Houston, Texas; (4) failed to submit truthful and complete monthly probation reports about his net earnings and his possession of the Porsche; (5) failed to make his court-ordered monthly restitution payments of $200 and was $1,806.50 in arrears.[1]  According to the revocation petition, Olusola reported a total net earnings of $8,150 from employment between March 2011 and January 2012, but his bank records reflected that he had deposited $223,000 over the same period.

## C.    Revocation Hearing

Olusola was arrested, and a revocation hearing was held over three days.  In support of the bank fraud allegation, the government presented testimony from an official with Bank of America, a Special Agent for the U.S. Secret Service, and an agent with the Drug Enforcement Agency ("DEA").

According to this testimony, on November 30, 2012, a man named John Oh entered the Bunker Hill branch of Bank of America in Houston, Texas.  Using counterfeit documents and posing as Kenneth Luong the president of Ming Resources, Oh transferred $185,000 from Ming Resources's corporate account to the Chase Bank account of a woman named Brittany Williams.  Oh also withdrew $50,000 in cash from Ming Resources's account.  On December 1, 2012, Oh

---

[1]The petition also included an allegation that Olusola had associated with a convicted felon, but the government later withdrew that allegation.

returned and attempted to wire $235,800 from Ming Resources's account or to obtain a cashier's check in that amount, but he was unsuccessful.  On December 3, 2012, Oh returned again and successfully wired $235,800 from Ming Resources's account to a woman named Vanessa Bunner.  Oh did not have authorization from Ming Resources or Luong to make the transfers or the withdrawal.  On December 6, 2012, Oh was arrested when he returned to the bank and attempted to withdraw further funds from Ming Resources's account.

During an interview after his arrest, Oh identified Defendant Olusola as his co-conspirator.  According to Oh, he and Olusola made two trips to Houston.  On the first trip, which occurred between November 30 and December 3, 2012, Defendant Olusola drove Oh to and from Houston in a white Chevy Impala rental car.  After the first trip, Defendant Olusola contacted Oh and told him the Ming Resources account was still good and that flights were coordinated.  In Houston, Defendant Olusola drove Oh to various banks, made sure Oh had a hotel room and was fed, made sure Oh dressed properly, performed lookout duties outside the bank, and texted Oh when the police arrived at the bank.

Corroborating Oh's story, surveillance photos showed Defendant Olusola visiting Bank of America branches in the Houston area between December 1, 2012 and December 6, 2012.  In some of the photos, Defendant Olusola drove a white Chevy Impala.  Between November 30 and December 6, 2012, Defendant

4

Olusola's bank records showed he made numerous deposits in the Houston area Bank of America branches, including the Bunker Hill branch. Defendant Olusola's bank records also contained charges at Houston area hotels between November 30 and December 6. The guest record for one of the hotels reflected that Defendant Olusola checked in on November 30 and checked out on December 3, 2012.

When Oh was arrested, investigators recovered three cellphones. Forensic examination of the cell phones revealed text messages to a phone number, saved on another of Oh's phones under the name "Tru," which is Defendant Olusola's first name.

An individual named "Ace" used the phone number to communicate with Oh. Among the text messages to Ace, was a November 1, 2012 message asking Ace whether his paperwork was original or a duplicate. In a November 28, 2012 text message, Ace told Oh, "Got a car will call u." Oh responded, "What time are we leaving?" Another November 28 message from Ace reminded Oh not to forget a dress shirt, slacks, and tie and advising Oh to look professional.

A November 29, 2012 message from Oh to an individual named "doggs" stated that Oh needed to "decide on an amount" and that Oh was "working out the detail with Tru. That's the guy putting it together."

On December 5, 2012, Ace sent a message to Oh asking him to call on an iPhone number. That iPhone number was subscribed to Defendant Olusola. Three

5

days after Oh's December 6 arrest, the subscriber information for that iPhone number was changed to a different individual.

Another December 5, 2012 message from Ace stated that "Southwest flight 8 leaves 6am arrives 7:20am." Other text messages between Ace and Oh indicated that they arranged to meet at the airport and that Oh would wait for Ace at the check-in area. Defendant Olusola's bank records showed he purchased two tickets for Southwest Airlines Flight Eight. Southwest Airlines flight manifests indicated that Flight Eight traveled from Atlanta to Houston on December 6, 2012 and that both Oh and Defendant Olusola were passengers on that flight.

Finally, there were a string of messages from Ace to Oh on December 6, 2012, just before Oh was arrested, warning Oh to keep his eyes open and then that the police had arrived.[2]

On December 17, 2012, shortly after Oh's arrest, Defendant Olusola contacted a DEA agent, Julio Alba, offering to act as a confidential source. Defendant Olusola told Agent Alba that he had met a man named Finch who was a drug trafficker who also was operating a fraudulent check scheme. Defendant Olusola said that Finch used Asian couriers with false identification to withdraw large amounts of money from targeted bank accounts in Houston and then

---

[2]Oh's November 30 and December 1 visits to the bank were captured on surveillance video. Olusola was not seen in the videos. In addition, Oh was seen getting into a dark colored car rather than a white Chevy Impala.

transported the money back to Georgia.  Olusola admitted that he had traveled to Houston in November 2012 at Finch's request, but denied that he had participated in Finch's scheme.

The government also presented evidence from Defendant Olusola's probation officer about his other alleged supervised release violations.  We do not summarize this testimony because Olusola does not contest these violations on appeal.

At the close of the evidence, the district court found that Defendant Olusola had violated his supervised release conditions by leaving the district without permission, failing to submit truthful and complete monthly reports to his probation officer, and failing to pay court-ordered restitution.  At the district court's direction, the parties filed briefs as to the remaining two alleged violations—violating the law and failing to comply with financial audit requirements.  Defendant Olusola's brief conceded that he had not disclosed his possession of a Porsche on financial audit documents to his probation officer but argued that the government's evidence did not prove that he had committed a bank fraud crime with Oh in Houston.

## D.    District Court's Ruling

At the final revocation hearing, the district court found that the government had proven by a preponderance of the evidence that Olusola "was at least a co-

conspirator in a bank fraud" committed in Houston and thus violated the terms of supervised release by engaging in criminal conduct.  The district court further found that Olusola had committed the other four alleged supervised release violations.  The district court determined that the most serious violation was a grade B violation and that Olusola's criminal history category was VI, which resulted in an advisory guidelines range of 21 to 27 months.  See U.S.S.G. § 7B1.4.

After the district court revoked Defendant Olusola's supervised release, Olusola requested a sentence at the bottom of the guidelines range, stressing that: (1) he was 55 years old; (2) he had nearly finished his original three-year supervised release term, and there was no indication that he had engaged in misconduct at the beginning of his supervised release term; and (3) "he may be looking at more exposure" for his actions.  The government requested 27-month sentences on each count of conviction, with the sentences to run consecutive to each other, for a total of 54 months.  The government pointed to Olusola's role as a supervisor in the Houston bank fraud, his flagrant disregard of the other supervised release conditions, including failing to report thousands of dollars in income and driving an expensive car while failing to pay restitution, and his extensive criminal history of theft and fraud offenses, including two prior federal fraud convictions.[3]

---

[3]In addition to his underlying 2007 bank fraud conviction, Olusola has a 1993 federal conviction for conspiracy to commit access device fraud and a 1995 federal conviction for conspiracy to commit wire fraud and access device fraud.

Olusola addressed the district court and said he was sorry for going "outside the boundaries" of supervised release and asked for mercy.

The district court imposed a 36-month sentence, 9 months above the advisory guidelines range, followed by 24 months of supervised release. The district court stated that it considered the 18 U.S.C. § 3553(a) factors. The district court stressed the seriousness of Olusola's violations, which were consistent with a pattern in his criminal history, and the need to deter Olusola and to protect the public from "what has become a common practice for [Olusola], which is to deceive people and institutions of property to which they are entitled." The district court stated it was unwilling to impose "a sentence that [he] would get if convicted of these offenses on a beyond a reasonable doubt standard," noting that it was up to the government to decide whether to prosecute Olusola for those crimes. The district court explained, however, that the seriousness of Olusola's conduct while on supervision, even when weighed against the additional exposure he faced for the new bank fraud, warranted a sentence "somewhat above" the guidelines range, but not the 54-month sentence the government requested.

After the district court imposed the 36-month sentence, Olusola objected to the district court's decision to impose a sentence above the guidelines range.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Defendant Olusola contends that the government failed to prove by a preponderance of the evidence that he committed the Houston bank fraud.

A district court may revoke a defendant's term of supervised release if the court finds by a preponderance of the evidence that the defendant violated a condition of supervised release.  18 U.S.C. § 3583(e)(3); see also U.S.S.G. § 7B1.3(a)(1) (providing that a district court "shall" revoke the supervised release term upon finding that a defendant, like Olusola, committed a Grade B violation). We review for abuse of discretion a district court's finding that a defendant violated a term of supervised release.  United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994).  We are bound by the district court's findings of fact unless they are clearly erroneous.  United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).[4]

To prove bank fraud, the government must establish that the defendant knowingly participated in a scheme to defraud or obtain money, funds, or credits in the custody of a federally insured financial institution, such as by means of material false pretenses, representations, or promises.  See United States v. Dennis, 237 F.3d 1295, 1303 (11th Cir. 2001).  To prove a conspiracy, the government must show that an agreement to commit bank fraud existed, that the defendant

---

[4]We reject that government's argument that plain error review applies.  At the close of the evidence, Olusola argued that the government's evidence was insufficient to show he violated the law, which was sufficient to preserve that issue for appellate review.

knowingly and voluntarily participated in the agreement, and that an overt act was committed in furtherance of the agreement.  See United States v. Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003).  Because a conspiracy is predominantly a mental crime, the common method for proving the conspiratorial agreement is through circumstantial evidence.  United States v. Pineiro, 389 F.3d 1359, 1369 (11th Cir. 2004).  In addition, "presence and association are material and probative factors" to consider in determining whether a defendant knowingly and voluntarily participated in the conspiracy.  United States v. Lluesma, 45 F.3d 408, 410 (11th Cir. 1995).

Here, the government presented more than sufficient evidence for the district court to find by a preponderance of the evidence that while on supervised release Olusola participated in the Houston bank fraud conspiracy.  According to the government's evidence, Oh, the man who handled the fraudulent wire transfers and withdrawals at the Bank of America's Bunker Hill branch in Houston, identified Defendant Olusola as his co-conspirator.[5]  Oh claimed that Defendant Olusola was with him in Houston during the bank fraud and helped him by, among other things, securing him a hotel room, ensuring he was properly dressed, driving him around,

_____

[5]On appeal, Olusola points out that Oh did not testify at the revocation hearing, but Olusola does not argue that the district court erred in admitting Oh's post-arrest statement through Agent Lombard's testimony.  Further, as Olusola acknowledges, at the revocation hearing he did not object to Agent Lombard's testimony recounting Oh's post-arrest statement. Accordingly, any challenge to the admission of this evidence is abandoned.  See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("[A] party seeking to raise a claim or issue on appeal must plainly and prominently so indicate.")

11

and acting as a lookout.  Further, the government presented ample evidence corroborating Oh's story, including: (1) text messages with a co-conspirator nicknamed "Ace" who used phones linked to Defendant Olusola and arranged details of the scheme, such as dress and travel; (2) a text message from Oh identifying Olusola as "the guy putting [the scheme] together"; and (3) documentary evidence and/or surveillance footage showing that Defendant Olusola purchased two plane tickets and flew on the same plane to Houston as Oh, made two hotel reservations in Houston and stayed at a hotel near the Bunker Hill branch, and visited various Bank of America branches in Houston, all in the relevant time frame.

We reject Olusola's claim that the government failed to prove by a preponderance of the evidence that he was "Ace."  According to Oh, as corroborated by the government's other evidence, Olusola was the person who accompanied Oh to Houston to commit the bank fraud.  Furthermore, some of the things Oh said Olusola helped him do were things "Ace" did in text messages to and from phones linked to Olusola, such as flying with Oh to Houston, ensuring that Oh dressed properly for his bank visits, and acting as a lookout while Oh was in the bank.  The government's evidence, taken as a whole, indicates that Olusola and "Ace" were the same person.  And, even if Olusola was not "Ace," the other evidence remains sufficient.

12

Although some of the government's evidence was circumstantial, the district court's finding that Olusola participated in Oh's bank fraud conspiracy was not based on speculation or on unreasonable inferences.  In light of the record as a whole, we cannot say that the district court's finding was clearly erroneous.  See United States v. Almendina, 686 F.3d 1312, 1315 (11th Cir.), cert. denied, 133 S. Ct. 629 (2012) (explaining that a factfinder's choice between two reasonable and different constructions of the evidence cannot be clear error).  Accordingly, the district court did not abuse its discretion in concluding that Olusola violated his supervised release condition that prohibited him from violating any federal, state, or local law.

## B.     Reasonableness of Sentence

Olusola contends that his 36-month sentence is substantively unreasonable.[6] If the district court finds that the defendant violated a supervised release condition, the court may revoke the supervised release term and impose a prison term after considering certain factors set forth in 18 U.S.C. § 3553(a).[7]  The district court

---

[6]Olusola does not argue that the district court committed any procedural error at the revocation hearing.

[7]Specifically, in a revocation proceeding, the relevant factors the district court must consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training and medical care: (3) the Sentencing Guidelines range and pertinent policy statements of the Sentencing Commission; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution.  See 18 U.S.C. § 3583(e) (cross-referencing 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7)).

13

must also consider the policy statements in Chapter 7 of the Sentencing Guidelines, which includes recommended ranges of imprisonment.  United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006); U.S.S.G. § 7B1.4.

"We review the sentence imposed upon revocation of supervised release for reasonableness."  United States v. Velasquez Velasquez, 524 F.3d 1248, 1252 (11th Cir. 2008).  Our reasonableness review applies the deferential abuse of discretion standard.  Gall v. United States, 552 U.S. 38, 41, 46, 128 S. Ct. 586, 591, 594 (2007).  In reviewing for reasonableness, we first consider whether the district court committed any significant procedural error and then whether the sentence is substantively unreasonable in light of the relevant § 3553(a) factors and the totality of the circumstances.  United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).  The party challenging the sentence has the burden to show it is unreasonable.  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

If the district court decides to impose an upward variance, "it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting Gall, 552 U.S. at 50, 128 S. Ct. at 597).  However, we will not vacate such a sentence unless "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range

of reasonable sentences dictated by the facts of the case." United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009) (internal quotation marks omitted).

Olusola has not shown that his 36-month sentence is substantively unreasonable. The parties do not dispute that, with a Grade B violation and a criminal history category of VI, Olusola's recommended guidelines range under advisory Chapter 7 was 21 to 27 months. See U.S.S.G. § 7B1.4(a). Because Olusola was on supervised release for a Class B felony, the statutory maximum upon revocation was three years. See 18 U.S.C. § 3583(e)(3).

As the district court found, Olusola's supervised release violations were serious. Olusola, who was on supervised release for bank fraud, was involved in a new bank fraud scheme that resulted in $420,000 in losses. Olusola hid his travel to Houston from his probation officer and lied to a DEA agent about his involvement in the new bank fraud. In addition, while Olusola was reporting only modest earnings to his probation officer and was failing to pay restitution, he was depositing a total of over $200,000 into his bank account and driving a Porsche worth over $80,000.

As the district court emphasized, Olusola's current supervised release violations were consistent with his past pattern of deceiving people and defrauding institutions. Olusola has an extensive history of fraud crimes. In addition to his underlying bank fraud conviction, Olusola has two prior federal fraud conspiracy

15

convictions.  Although the district court considered the fact that Olusola may face criminal prosecution for his involvement in this latest bank fraud, the court concluded that a nine-month upward variance was necessary to protect the public and deter Olusola.  Under the totality of the circumstances, we cannot say the district court's decision to impose a 36-month sentence was an abuse of discretion.

**AFFIRMED.**